**STATE of Iowa, Appellee,**

v.

**Ronald LAM, Appellant.**

No. 85–788.

Supreme Court of Iowa.

July 23, 1986.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Ann DiDonato, Asst. Atty. Gen., and Gary L. Sissel, Asst. Co. Atty., for appellee.

Considered by McGIVERIN, P.J., and SCHULTZ, CARTER, WOLLE and LAVORATO, JJ.

McGIVERIN, Justice.

Defendant Ronald Lam was found guilty by a jury of two counts of second degree burglary in violation of Iowa Code sections 713.1 and 713.5 (1983). Because he also was alleged and shown to be an habitual offender, Iowa Code section 902.8, the trial court sentenced defendant as an habitual offender to no more than fifteen years imprisonment on each count and ordered the sentences to be served consecutively. Iowa Code §§ 901.8 and 902.9(2). Defendant appealed, raising five assignments of error. We affirm.

This is a companion case to *State v. Holland,* 389 N.W.2d 375 (Iowa 1986), and involves the same burglaries charged there.

On October 30, 1984, the Bettendorf residences of Susan Murphy and Stacy Semenczuk (Murphy apartment) and Darrell DeWitt were burglarized. The Murphy apartment was located within two blocks of DeWitt's residence. Both burglaries occurred during daytime working hours, between 7:15 a.m. and 5:00 p.m. Pieces of jewelry, a revolver and other small portable items were taken. Entry was gained in both cases by prying open the door of the residence with a screwdriver.

On the afternoon of the burglaries, defendant and a co-defendant, Richard Holland, were seen together in a common hallway of the Murphy building. They also were observed together in a parking lot outside of the Murphy apartment where a cream-colored two-door Cadillac was parked. That automobile was later identified as belonging to defendant.

Acting upon information connecting Holland to the Murphy burglary, police officers obtained a warrant for his arrest which specified that he might be found at the residence of defendant's sister, Donna Lam, who was Holland's girlfriend, or in a tan Cadillac.

The search and arrest warrants for Holland were executed at the residence of Donna Lam on November 1. The police

obtained Donna Lam's consent to search the premises, and several items of property taken in the Murphy and the DeWitt burglaries were uncovered.

While officers were arresting Holland, defendant unexpectedly arrived on the scene in a cream-colored two-door Cadillac. The officers informed defendant that Holland was under arrest for two counts of burglary and that they were going to make a request from Donna Lam to allow them to search the home.

The officers then noticed that the car defendant was driving fit the description of a car seen outside the Murphy apartment on the day of the burglary. Defendant and Holland were seen jump-starting the automobile in the parking lot. The police also were aware that defendant and Holland "ran together." Therefore, defendant was informed that his vehicle would be seized to have it identified by the witnesses who saw it in the Murphy parking lot. A wrecker came and towed the car to a city pound.

Defendant called the police station the day after the seizure, seeking information about when the car would be released. On November 6, defendant came to the police department and was informed that the car had not yet been identified and that officers wished to search it. Defendant signed a written consent to search which was explained to him by one of the officers.

A search of the automobile then was conducted which revealed a watch that had been taken in the Murphy burglary and a screwdriver. Later, at trial, there was expert opinion testimony that the pry marks on the Murphy apartment door were made by the screwdriver found in defendant's car. The marks left on the door of the DeWitt apartment also exhibited the same class characteristics as the screwdriver. However, because DeWitt's door was wood, there were fewer marks to compare than there were with the metal one from Murphy's apartment. After examining a photograph of the DeWitt door, the expert did find some individual characteristics of the pry marks that matched the screwdriver in question. However, he could not positively identify the screwdriver found in defendant's car as being the one that made the marks.

After the search, defendant was charged with two counts of second degree burglary in connection with the Murphy and DeWitt crimes. Defendant then filed a motion to sever the counts of the burglaries, Iowa Rule of Criminal Procedure 6(1), which was overruled by the trial court. Defendant also sought to have the fruits of the search of his automobile suppressed because he contended that his fourth amendment rights were violated by the seizure of his automobile. This motion also was overruled by the court.

Prior to trial, Darrell DeWitt, the victim of the first burglary, informed the prosecutor that he would be outside the state at the time of defendants' trial and did not want to come back to testify. Apparently, he had to reschedule the trip several times in order to accommodate depositions and a trial continuance granted in the case. No subpoena was issued in an attempt to compel his presence at trial and, over defendant's objection, the State was permitted to introduce DeWitt's videotaped deposition testimony at trial. All parties were present when the deposition was taken and full cross-examination was allowed.

Defendant was convicted of two counts of second degree burglary in violation of Iowa Code sections 713.1 and 713.5. He was sentenced to a term of not to exceed fifteen years imprisonment on each count pursuant to the habitual offender provisions contained in Iowa Code sections 902.8 and 902.9. The sentences were ordered served consecutively.

Defendant appealed, raising five assignments of error. He claims that: 1) the fruits of a warrantless search and seizure of his automobile should have been suppressed; 2) the two burglary charges against him should have been tried separately; 3) Darrell DeWitt, the State's witness, was not unavailable for trial, and, thus, his deposition testimony should not have been admitted; 4) the evidence was insufficient to support submitting one of

the burglary charges to the jury; and 5) he was erroneously sentenced as a two-time habitual offender.

I. *Warrantless search and seizure of defendant's automobile.* A screwdriver, and a gold watch taken in the Murphy burglary, were found during a search of the Cadillac conducted pursuant to defendant's written consent signed six days after the automobile was impounded. Defendant does not contest the validity of his written consent to search; rather, he contends that an unconstitutional seizure of the automobile occurred when it was impounded without a warrant and in the absence of exigent circumstances. Accordingly, defendant asserts that the unconstitutional seizure tainted the subsequent consent search, and, therefore, the trial court should have suppressed the evidence found in the automobile. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963).

Because defendant claims the search violated his fourth amendment constitutional rights, a de novo standard of review applies. *State v. Cullor,* 315 N.W.2d 808, 810 (Iowa 1982).

■ We begin our analysis by acknowledging that the towing of defendant's automobile to the police lot constituted a seizure within the meaning of the fourth amendment of the United States Constitution. *See Cardwell v. Lewis,* 417 U.S. 583, 593, 94 S.Ct. 2464, 2470–71, 41 L.Ed.2d 325, 336 (1974). Generally, a search or seizure conducted without a warrant is *"per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (footnote omitted); *see Cullor,* 315 N.W.2d at 811. Among these is the "automobile exception" set forth by the Supreme Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Since *Carroll,* the Supreme Court has addressed the parameters of the automobile exception in numerous cases, including *Cardwell v. Lewis.* In *Cardwell,* the Court upheld the warrantless seizure of an automobile lawfully parked in a public place. This warrantless seizure was upheld on the grounds that the police had probable cause to believe that the car was evidence of a crime and that prompt action was necessary because members of the defendant's family might remove it. 417 U.S. at 593–96, 94 S.Ct. at 2470–72, 41 L.Ed.2d at 336–38.

Emphasizing the inherent mobility of vehicles and the reduced expectation of privacy accorded to them, the Supreme Court recently upheld the warrantless search of a lawfully parked, but fully mobile motor home under the automobile exception. *California v. Carney,* —— U.S. ——, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). There, the Court stated:

> In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.

*Id.* at ——, 105 S.Ct. at 2070, 85 L.Ed.2d at 414.

■ The Court's decision makes it clear that under the automobile exception which was created in recognition of the decreased expectation of privacy accorded to a vehicle and the exigencies associated with it, a warrantless search of a vehicle may be made if the authorities have probable cause. It follows from this premise that a warrantless *seizure* of a vehicle based on probable cause and exigencies would fall within the automobile exception to the warrant requirement.

■ Here, police officers had probable cause to associate the Cadillac with criminal activity. It was seen backed into a parking space at the lot of the apartment complex, where one of the burglaries occurred, by several witnesses. Lam and Holland were seen jump-starting the Cadillac in the Murphy apartment parking lot

after leaving the hallway outside the Murphy apartment. The police were aware that defendant and Holland "ran together." Further, officers had discovered an item of property taken in the DeWitt burglary during a cursory safety check search of Donna Lam's residence after arresting Holland.

■ This court has stated that "[t]he exigency requirement, as explained in prior cases, is satisfied 'when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' " *State v. Holderness*, 301 N.W.2d 733, 737 (Iowa 1981) (citations omitted). Exigencies existed which necessitated prompt seizure and removal of defendant's vehicle. Defendant was present and alerted that Holland was being arrested for the burglaries. If the automobile had not been seized immediately, there was a clear likelihood that the car and its contents may never have been located again had the police departed to obtain a search warrant.

Thus, because both probable cause and exigent circumstances existed, we conclude the warrantless seizure of defendant's automobile was proper under this record.

Defendant does not claim that the consent obtained to search his car was involuntary or in any other way invalid. Therefore, because we have found the initial seizure of the automobile was not conducted in violation of defendant's constitutional rights, the subsequent search conducted pursuant to the voluntary and uncoerced consent was also valid. *See Holland*, 389 N.W.2d 375, 381.

In these circumstances, we are satisfied the trial court properly denied defendant's motion to suppress evidence secured from the vehicle.

II. *Defendant's motion to sever counts I and II.* We next address defendant's second assignment of error which complains that the trial court wrongly denied a pretrial motion in which defendant sought an order that count I of the amended information be tried at a different trial than the one at which count II was adjudicated.

Therefore, we must determine if the court abused its discretion in not ordering the counts to be severed for trial.

Former Iowa Rule of Criminal Procedure 6(1) provided:

When the conduct of a defendant may establish the commission of more than one public offense arising out of the same transaction or occurrence, the defendant may be prosecuted for each of such offenses. Each of such offenses may be alleged and prosecuted as separate counts within a single complaint, information or indictment, unless for good cause shown, the trial court in its discretion determines otherwise.

That rule was amended in 1983 and now permits a joinder of offenses in a single complaint, information or indictment when the offenses charged are based on 1) the same transaction or occurrence, or 2) a common scheme or plan. The underlying theme of the amended rule is the achievement of judicial economy through the joinder of related offenses. *State v. Bair*, 362 N.W.2d 509, 511 (Iowa 1985).[1] In *Bair*, we stated that the amendment "liberalizes and broadens charging practices so as to allow prosecutors more leeway in seeking to join multiple offenses for a single prosecution." *Id.*

A "common scheme or plan" by its very definition presupposes that it involves a series of separate transactions or acts. In the present case, two separate criminal acts were charged. This court has not construed the meaning of the words "a common scheme or plan," the phrase added to rule 6(1) by amendment. Therefore, we will consider the decisions of courts in other jurisdictions which have addressed this issue.

---

1. In *State v. Bair*, 362 N.W.2d 509, 511 (Iowa 1985), we held that former Iowa R.Crim.P. 6(1) applied to that case. Therefore, our conclusion that the two counts of robbery should have been severed for trial is not dispositive here. We stated the amendment to rule 6(1) substantially changed it. *Id.* Further, we noted that the events leading up to the two robberies might qualify as a "common scheme or plan" under amended rule 6(1). *Id.* at 512.

The state rule of criminal procedure regarding joinder in Missouri is, in substance, identical to our rule 6(1).[2] In *State v. Garrette*, 699 S.W.2d 468, 493 (Mo.Ct.App. 1985), the court stated that the essential test in determining whether a common scheme or plan exists is the requirement that all offenses charged must be products of a single or continuing motive. Applying this test in *Garrette*, the court found that the trial court properly refused to sever certain counts of an indictment relating to the sales of unregistered securities from those dealing with fraud in the sales of securities. The court found all the offenses charged were part of a common scheme or plan whereby the defendant had induced investors to place money into his enterprise. *See also State v. McCrary*, 621 S.W.2d 266, 271–72 (Mo.1981) (offenses of assault with intent to kill with malice aforethought, first degree arson, first degree assault and carrying a concealed weapon were properly joined and tried together although the crimes occurred at different times within a four month period because they were products of a continuing motive of revenge); *State v. Burroughs*, 673 S.W.2d 474, 476 (Mo.Ct.App.1984) (offenses of rape, sodomy, incest and promoting prostitution which occurred over a twenty-two month period involved a common scheme or plan to pervert defendant's children's morals and to use them for his enjoyment and profit; thus, offenses did not need to be severed).

Rule 6(1) is similar to Federal Rule of Criminal Procedure 8(a). However, that rule is broader in that it allows the joinder of offenses "of the same or similar character" in addition to the language found in the Missouri and Iowa rules. However, that portion of the federal rule permitting joinder of offenses that are a part of a "common scheme or plan" has been accorded a fairly liberal definition by the courts. *See United States v. Rabbitt*, 583 F.2d 1014, 1021 (8th Cir.1978) (joinder proper when all offenses were connected by the common plan of defendant to obtain money because of his authority, influence and

power as a legislator); *State v. Quinones*, 516 F.2d 1309, 1312 (1st Cir.) (joinder of an unrelated escape charge to several substantive offenses arising out of a crime spree was proper), *cert denied*, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975).

■ Defendant attempts to analogize the joinder of offense principles found in Iowa Rule of Criminal Procedure 6(1) to the common law evidentiary rule excluding admission of evidence of unrelated crimes to establish a defendant's guilt of the crime charged. *See State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971); *see also* Iowa R.Evid. 404(b). This evidentiary rule deals with what evidence is properly admissible to prove the crime charged. The joinder of offenses rule deals with the more basic question of what crimes can be charged and tried in a single proceeding. As the Missouri Supreme Court noted, "The two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with joinder of offenses inappropriate." *McCrary*, 621 S.W.2d at 271 n. 7.

We agree with the Missouri court. The evidentiary rule may allow admission of crimes quite remote in time while the rule of joinder contemplates events occurring within a closer time frame.

■ Applying rule 6(1) in light of the above authorities to the present case, we find no abuse of discretion in the trial court's denial of the severance requested by defendant Lam. The State's evidence is sufficient to support a finding that the two offenses charged in the amended information were parts of a common scheme or plan to burglarize apartments during normal working hours. It is readily inferable that both offenses were products of a single and continuing motive for obtaining small portable objects from apartments for money. The two counts involved offenses alleged to have been committed during a period of several hours on the same day in the same general location and using the same means of entry and transportation.

---

**2.** Mo.R.Crim.P. 23.05 (1983).

Further, we find that the goals of rule 6(1) of judicial economy and allowing prosecutors more leeway in charging multiple offenses were served. It was defendant's burden to show that "his interest in receiving a fair trial uninfluenced by the prejudicial effects which could result from a joint trial outweighed the State's interest in judicial economy." *State v. Trudo*, 253 N.W.2d 101, 104 (Iowa), *cert denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977). This burden was not met. Defendant has not demonstrated that prejudice occurred to him as a result of the joinder.

Defendant's second assignment of error is without merit.

III. *Videotaped deposition evidence.* Defendant next contends that the videotaped deposition of State's witness DeWitt violated his right to confrontation under the sixth amendment to the United States Constitution and was hearsay. This issue was decided adversely to Lam by our holding in *Holland*, 389 N.W.2d at 379. There, we held that the admission of the videotaped DeWitt deposition testimony was harmless error.

IV. *Sufficiency of the evidence on count I.* We next consider defendant's fourth assignment of error, which asserts that the evidence was insufficient to support submitting one of the charges, count I involving the DeWitt burglary, to the jury. At trial, defendant made timely motions for judgment of acquittal, Iowa Rule of Criminal Procedure 18(8)(a), which were overruled. In considering this issue, we examine all the evidence in the light most favorable to the State under the principles enunciated in *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984).

It is well-settled that in determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record, which if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this court will accept that evidence and all legitimate inferences that can fairly be drawn from it

which will support the verdict. *State v. Schertz*, 328 N.W.2d 320, 321 (Iowa 1982).

The record contains minimally sufficient evidence to support the jury's finding of guilt on count I. Although "[t]he mere fact of the acquaintance and relations of the parties,—that they frequently were together, both before and after the [crime]— of itself is not sufficient to ... connect the [defendant] with the commission of the offense," *State v. Pauley*, 210 Iowa 192, 195, 230 N.W. 556 (1930), we need not ignore the fact that both Holland and defendant were seen together close to the location of the DeWitt burglary.

Also, Holland was found to be in possession of property from both the DeWitt and Murphy residences. Both homes were broken into by means of a screwdriver forcing open a locked door. The screwdriver found in Lam's car was identified as being used in the Murphy burglary. This screwdriver had a very unique tip because it was broken off. There was a match both of class and individual characteristics between the screwdriver found in defendant's car and the pry marks on DeWitt's wooden door.

This, we conclude, as did the trial court, was sufficient evidence from which a jury could have found defendant guilty of second degree burglary of the DeWitt residence on count I.

V. *Sentencing.* The final item for consideration is whether the trial court properly sentenced defendant as an habitual offender on both second degree burglary charges. *See* Iowa Code §§ 902.8 and 902.- 9(2).

The State contends that error was not preserved in the trial court on this issue. It cites *State v. Spoonmore*, 323 N.W.2d 202, 203 (Iowa 1982), as authority for the proposition that a defendant who asserts the inapplicability of the habitual offender statute to his or her case must make the proper objection prior to trial of the underlying charges. Failure to do so results in a waiver of the right to later make an objection on those grounds. *See State v. Smith*,

282 N.W.2d 138, 143 (Iowa 1979). This is in accord with Iowa Rule of Criminal Procedure 18(9) which provides that an objection such as defendant now raises must be asserted prior to trial of the substantive offenses.

We pass that question regarding error preservation, however, and consider the assignment on the merits. Iowa Code section 902.8 provides:

> *An habitual offender is any person convicted of a class "C" or a class "D" felony, who has twice before been convicted of any felony* in a court of this or any other state, or of the United States. An offense is a felony if, by the law under which the person is convicted, it is so classified at the time of his or her conviction. A person sentenced as an habitual offender shall not be eligible for parole until the person has served the minimum sentence of confinement of three years.

(Emphasis added.)

The language of the statute clearly establishes the requirement that a defendant be convicted of two prior felonies before this enhanced sentencing provision is applied. In *State v. Hollins,* 310 N.W.2d 216 (Iowa 1981), we interpreted the statute and determined that the first of the two previous felony convictions must have occurred before defendant committed the second one in order for both to count for purposes of the habitual offender statute. *Id.* at 217. In *Hollins,* the State attempted to count two prior felony convictions which occurred on the same day in order to trigger the operation of the habitual statute. We disallowed this practice because the first felony *conviction* did not occur before the *commission* of the second felony.

■ Here, defendant was convicted of three previous felonies, one in 1976, one in 1979 and one in 1980. Each felony conviction occurred before defendant committed the next one. Therefore, defendant's argument fails on the merits because under the plain language of the habitual offender statute it may be applied to each subsequent class "C" or "D" felony committed

by him, as the trial court did here. Nothing in section 902.8 indicates to the contrary.

V. *Disposition.* We have considered all of defendant's contentions and find them without merit. Accordingly, defendant's conviction and sentence on the two charges of second degree burglary are affirmed.

AFFIRMED.