STATE of Iowa, Appellant,

v.

Mark Allen CAIN, Appellee.

No. 85–1247.

Supreme Court of Iowa.

Feb. 18, 1987.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. General, and Denver D. Dillard, Co. Atty., for appellant.

Thomas J. O'Flaherty, Cedar Rapids, for appellee.

Considered by REYNOLDSON, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

Defendant Mark Allen Cain was charged by trial information with the crimes of burglary in the second degree and theft. He filed a pretrial motion to suppress statements he made to the police prior to his arrest and physical evidence seized in a

warrantless search of his vehicle. We granted the State's application for discretionary review of the trial court's order which suppressed the seized evidence. Iowa Code § 814.5(2)(b) (1985). We also allowed the defendant to cross-appeal from the trial court's denial of the motion to suppress a photograph and his oral statements. On review, we reverse in part, affirm in part and remand.

■ Because the issues raised on appeal challenge the constitutionality of the State's actions, we examine the evidence before the trial court de novo. *State v. Vincik*, 398 N.W.2d 788, 789 (Iowa 1987); *State v. Nelsen*, 390 N.W.2d 589, 591 (Iowa 1986).

On April 5, 1985, a burglary occurred at Power Equipment Company of Cedar Rapids, Iowa, resulting in the theft of a garden tractor. The incident was brought to the attention of the company by an employee of a neighboring business who witnessed a white male in a red and white van towing another white male astride a garden tractor on the street adjoining the business site. As the witness observed the twosome, the tractor fell over, pinning its rider underneath and dragging him along the roadway for some distance. The rider was obviously injured and limped badly as he eventually made his way off the tractor and into the van.

Given the foregoing facts, investigating officer Richard Nelson surmised that such injuries might require medical attention. He notified the local hospitals to be on the lookout for a patient reporting broken bones or bruises and cuts commonly associated with cement burns. Just before noon on the same day, Saint Luke's Hospital advised officer Nelson that a young man had come to the hospital seeking emergency treatment for cement burns and a broken wrist. Officer Nelson proceeded to the hospital to talk to the patient, defendant Mark Cain. After first identifying himself as a police officer, Nelson questioned the defendant about the source of his injuries. The defendant responded that he had fallen out of his van; he had been drinking heavily and was unsure how or where the accident occurred. Further questioning revealed that his van was red and white. Officer Nelson, believing that the defendant should be investigated as a suspect in the burglary, asked Cain if he would accompany him to the police station to give a statement. The defendant agreed and accompanied the officer voluntarily. At the station, officer Nelson introduced the defendant to detective Stan McClurg who read Cain his *Miranda* rights and obtained from him a signed waiver of rights form. The defendant then told McClurg that he had fallen out of his van while Nevin Leichliter was driving and that his van was now parked at a friend's house. He denied participation in any burglary and requested that the detective hurry up and charge him so he could call his attorney. Questioning of the defendant then stopped and he was placed under arrest.

I. *Motion to suppress oral statements.*

The defendant moved for a pretrial order suppressing "all evidence obtained directly or indirectly from illegal interrogation of the defendant conducted by Cedar Rapids police officers on April 5, 1985." Following an evidentiary hearing, the trial court denied the motion, concluding that the defendant was not in custody when questioned by officer Nelson at the hospital and that defendant's station house statement to detective McClurg was preceded by a knowing and voluntary waiver of defendant's *Miranda* rights. On our de novo review of the record, we concur with the trial court.

In *State v. Kyseth*, 240 N.W.2d 671 (Iowa 1976), we examined the constitutional safeguards accorded an individual being questioned by police in a hospital. We began with the familiar principle that *Miranda* applies only to "custodial interrogation," that is, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Kyseth* at 673 (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86

S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966)). We then invited a comparison of those cases in which hospital interrogation was marked by police detention and coercion and those cases in which the patient's detention resulted purely from ongoing medical treatment.

We need not reexamine that body of law here. The significance of *Kyseth* is that it too involved police interrogation of a suspect in a hospital emergency room. The questioning was accompanied by neither detention nor arrest. We held that such a situation was not "custodial interrogation" and that the requirement of *Miranda* warnings did not apply. *Id.* at 673.

▮ The principle underlying our holding in *Kyseth* applies even more forcefully to the case before us. Although officer Nelson spent nearly two hours with the defendant at the hospital, the uncontroverted evidence is that his conversation with him was brief because, in officer Nelson's words, the defendant "laid there on the bed … and we just didn't talk, you know; he was being treated." Contrary to defense counsel's suggestion that the environment was coercive and the defendant was deprived of his freedom, we are convinced that the defendant's hospitalization was entirely volitional. As officer Nelson noted, the defendant "could have got up and walked out, and I couldn't have done a thing about it." There is no evidence in the record to persuade us otherwise. Based on our review of the totality of the circumstances, we determine that the defendant was not "in custody" at the hospital. Thus, any statements made by the defendant to officer Nelson are not rendered inadmissible by the failure of the officer to give him *Miranda* warnings.

▮ Turning to defendant's questioning by detective McClurg at the police station, we similarly conclude that defendant's allegation of constitutional deprivation is not supported by the record. Prior to reading the defendant his *Miranda* rights, detective McClurg took a few minutes to introduce himself and explain the nature of the investigation. This limited interaction with the defendant was not "interrogation" nor did the defendant make any incriminating statements prior to the completion of the rights waiver form.

The assignment of error is without merit.

### II. *Motion to suppress physical evidence.*

After detective McClurg questioned the defendant, he directed another officer to locate the defendant's van. The van was not parked at the address defendant had given, but was found parked outside the defendant's residence. The witness to the burglary was contacted and accompanied detective McClurg to the scene. Upon viewing the van, the witness positively identified the vehicle as the one he had seen towing the stolen tractor.

Detective McClurg and an identification officer then looked in the window of the van and saw a pair of bolt cutters lying between the driver's and passenger's seats near the front of the vehicle. The identification officer took photographs of both the exterior and interior of the van. The officers then proceeded to defendant's apartment, finding his mother at home. She gave them keys to the van and indicated she had no qualms about their searching it. Upon returning to the van, the officers found it unlocked. They searched the interior of the vehicle and seized the bolt cutters and a pair of pliers.

In support of its case, the State sought to introduce (1) a photograph taken of the interior of Cain's van and (2) the bolt cutters which were found to match marks made by the cutting tool used to gain entry in the burglary. The defendant moved to suppress the introduction of these items of evidence, claiming they were the product of an illegal, warrantless search of the defendant's vehicle. The trial court overruled the motion with respect to the photograph, but sustained the motion relative to the bolt cutters. On appeal, defendant challenges the first ruling. The State challenges the latter.

## A. The photograph.

█ The threshold question is whether the photo was taken from inside or outside the van. If the photo were taken from outside the van, parked in a public lot with its interior in full view to passers by, no violation of constitutional rights would be implicated. *See Hall v. Iowa,* 705 F.2d 283, 287, 292 (8th Cir.1983). Its admissibility would be controlled by the rules of evidence and we would reverse the court's decision only if clearly erroneous. Iowa R.App.P. 4; *see State v. Holderness,* 293 N.W.2d 226, 230 (Iowa 1980) (to admit a photograph into evidence, the picture must (1) be relevant to the controversy and (2) fairly represent what it shows).

Both detective McClurg and identification officer White testified that the photo was taken from outside of the van by pressing the camera lens against the window glass. Defense counsel, by way of cross-examination and argument, suggested that the photo was so clear that it could not possibly have been taken through a window covered with road grime and must have been taken after entry into the vehicle by the police. The trial court specifically found the State's witnesses to be credible and that the photo was produced in a manner consistent with their testimony.

We conclude that the trial court ruled correctly. The photograph is properly admissible.

## B. The bolt cutters.

█ Next we address the State's challenge to the trial court's order suppressing the bolt cutters seized from defendant's vehicle. The trial court, relying on *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), held that despite the erosion of constitutional protection surrounding searches of vehicles and seizure of their contents, the State was still required to prove exigent circumstances as well as probable cause before a warrantless search of a vehicle could be upheld. More recent decisions of the United States Supreme Court and this court, however, have made it clear that the exigency re-

quirement is always satisfied by a vehicle's inherent mobility. *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *State v. Lam,* 391 N.W.2d 245 (Iowa 1986).

In *Lam,* we traced the history of the so-called "automobile exception" to the general rule that a search or seizure conducted without a warrant is per se unreasonable under the fourth amendment to the United States Constitution. Beginning with the seminal case of *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), we observed that the decisions of the Supreme Court analyzing the legality of warrantless vehicle searches have placed increasing importance on the inherent mobility of vehicles and the reduced expectation of privacy accorded to them. In its most recent pronouncement on the topic, the Supreme Court sustained the warrantless search of a lawfully parked but fully mobile motor home holding that "the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *Carney,* 471 U.S. at 392, 105 S.Ct. at 2077, 85 L.Ed.2d at 406. Thus in *Lam* we held:

The court's decision makes it clear that under the automobile exception which was created in recognition of the decreased expectation of privacy accorded to a vehicle and the exigencies associated with it, a warrantless search of a vehicle may be made if the authorities have probable cause.

*Id.,* 391 N.W.2d at 248.

█ In the case before us, the defendant's lawfully parked but fully mobile vehicle presented the inherently exigent circumstance satisfying one prong of the formerly two-pronged test. The fact that the vehicle was positively identified as the one involved in the crime and that inculpatory evidence rested in plain view in its front seat clearly satisfied the remaining "overriding standard" of probable cause which justified the officers' warrantless search. *See State v. Cullor,* 315 N.W.2d 808, 811

(Iowa 1982). The trial court's ruling to the contrary was in error.

We therefore remand the case for trial in accordance with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.