# IN THE SUPREME COURT OF IOWA

No. 53 / 05-1980

Filed July 13, 2007

**STATE OF IOWA,**

    Appellee,

vs.

**MARK ANTHONY ELSTON,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, James S. Heckerman, Judge.

Applicant seeks further review of court of appeals decision holding the district court did not abuse its discretion in denying his motion to sever and preserving claims of ineffective assistance of counsel for possible postconviction proceedings. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Shelly Sedlak, Assistant County Attorney, for appellee.

**HECHT, Justice.**

This case is before us on further review of a court of appeals decision concluding the district court did not abuse its discretion in denying defendant Mark Elston's motion to sever a charge of indecent contact from charges of sexual exploitation and in preserving Elston's claims of ineffective assistance of counsel for possible postconviction proceedings. We affirm.

### I.      *Factual and Procedural Background.*

Mark Elston was a friend of Brenda Neff and her husband, Dale Neff. Brenda is the mother, and Dale the stepfather, of two female children, A.E. and her sister. Elston came to the Neffs' house almost every day to socialize with the Neffs and occasionally babysat the children. Elston and the Neffs generally spent time together in the Neffs' bedroom, with the door shut and locked.

Debra Krebs, who socialized with Elston and the Neffs and babysat A.E. and her sister on a regular basis, became suspicious that the children were being sexually abused. On February 10, 2005, she contacted the children's school counselor, who then met with the children. A.E. reported her stepfather had touched her inappropriately, and both children indicated they had seen "nasty pictures" on their parents' computer.

After meeting with the children, the school counselor called the Department of Human Services (DHS) and reported suspected sexual abuse. When they were interviewed the next day by a DHS social worker and a police detective, the children essentially repeated the allegations made previously to the school counselor, and A.E. also divulged that her stepfather had photographed her in the nude. After that interview but prior

to the execution of a search warrant on the Neffs' house, the children told investigators that Elston had touched them inappropriately.

The State charged Elston with eighteen counts of sexual exploitation of a minor, in violation of Iowa Code sections 728.12(1), 728.12(3), and 728.1(7)(*g*) (2005), and one count of indecent contact with a child, in violation of section 709.12(2). The sexual exploitation counts charged Elston with accessing child pornography through the Neffs' computer and participating with Mr. Neff in taking illicit photographs of A.E. from approximately July 1, 2003 through February 11, 2005. The indecent contact count alleged Elston inappropriately touched A.E. within the same timespan.

Elston filed a motion to sever the trial of the sexual exploitation of a minor counts from the trial of the indecent contact count. He contended separate trials would ensure the jury's compartmentalization of the evidence relevant to each charge. The district court overruled the motion.

A.E. testified at the jury trial that Elston, on at least two occasions, put his arm around her and then touched her between her clothed legs while they watched movies in the Neffs' home. During cross-examination, A.E. conceded that Elston may have touched her accidentally. A.E. also testified that her stepfather, Dale Neff, took nude photographs of her in the Neffs' bedroom and that Elston was sometimes present when this occurred. A.E. and her sister testified that they had observed Elston in that same bedroom using the Neffs' computer to observe nude pictures of young girls.

After A.E. testified, a detective who participated in the Elston investigation testified for the State. Through the detective, the State introduced seventeen photographs of young, naked females found on the hard drive of the computer in the Neffs' bedroom. In addition, the State

introduced numerous photographs of young, naked females found on the Neffs' screensaver. Although a forensics investigation of the Neffs' computer revealed no evidence he had ever downloaded or viewed any of the particular photographs introduced by the State, Elston admitted to investigators he had used the Neffs' computer to view sites featuring "females not completely developed."

None of the photographs retrieved from the Neffs' computer depicted A.E. in the nude. There was some evidence, however, that such photographs were on the Neffs' computer before the State seized it. Krebs testified she had seen a picture of A.E. naked on the Neffs' computer and expressed her concern to Elston, who told her he would "check into it." According to the detective who testified for the State, Elston conceded during an interview that he "thought" he had seen "one of the girls [A.E. or her sister] on the computer."

The district court granted Elston's motion for judgment of acquittal on all counts except the count of indecent contact with a child. The jury returned a guilty verdict on that count.

Elston filed a notice of appeal contending the district court abused its discretion in denying the motion to sever and asserting his trial counsel was ineffective. The court of appeals affirmed Elston's conviction and preserved his ineffective counsel claim for possible postconviction relief proceedings. We granted further review.

## II. *Standards of Review.*

We review refusal to sever multiple charges against a single defendant for abuse of discretion. *State v. Geier*, 484 N.W.2d 167, 172 (Iowa 1992) (citing *State v. Bair*, 362 N.W.2d 509, 512 (Iowa 1985)). We review

ineffective assistance of counsel claims de novo. *State v. Martin*, 704 N.W.2d 665, 668 (Iowa 2005).

### III.    Discussion.

### A.    Motion to Sever.

Our analysis of whether the district court abused its discretion in denying Elston's motion to sever begins with Iowa Rule of Criminal Procedure 2.6(1). This rule provides:

> Two or more indictable public offenses which arise from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan, when alleged and prosecuted contemporaneously, shall be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise.

We have held that transactions or occurrences are part of a "common scheme or plan" under Iowa Rule of Criminal Procedure 2.6(1) when they are the "products of a single or continuing motive." *See State v. Oetken*, 613 N.W.2d 679, 688 (Iowa 2000) (citing *State v. Lam*, 391 N.W.2d 245, 250 (Iowa 1986)). In ascertaining whether a "common scheme or plan" exists, "we have found it helpful to consider factors such as intent, modus operandi, and the temporal and geographic proximity of the crimes." *Id.* (citing *Lam*, 391 N.W.2d at 249-50).

We conclude the transactions forming the factual basis for the indecent contact charge and the sexual exploitation charges against Elston were part of a "common scheme or plan" under Iowa Rule of Criminal Procedure 2.6(1). All of the crimes alleged in this case against Elston could be found to have been motivated by his desire to satisfy sexual desires through the victimization of children. All of the transactions allegedly occurred in close geographic proximity within the Neffs' small home.

Although the temporal proximity of the alleged indecent contact and sexual exploitation offenses was not close[1] and the modus operandi allegedly employed by Elston was dissimilar, we find no abuse of discretion in the district court's determination that the several alleged offenses were part of a common scheme or plan.

Although the existence of a "common scheme or plan" indicates the charges should be joined, the district court nonetheless had discretion to sever the charges for "good cause." Iowa R. Crim. P. 2.6(1). To prove the district court abused its discretion in refusing to sever charges, Elston bears the burden of showing prejudice resulting from joinder outweighed the State's interest in judicial economy. *Oetken*, 613 N.W.2d at 689. For the reasons that follow, we conclude Elston has not met this burden.

Elston argues he suffered prejudice resulting from joinder of the sexual exploitation and indecent contact charges far outweighing the State's interest in judicial economy. Although he concedes the pornographic photographs would have been relevant to the sexual exploitation charges, Elston asserts the pictures would not have been admissible to prove the indecent contact charge, the only charge actually submitted to the jury, had it been tried separately, because they are inadmissible evidence of "other crimes, wrongs, or acts." Generally, evidence of an accused's other "crimes, wrongs, or acts" is inadmissible to prove his propensity to behave in a certain manner. *See* Iowa R. Evid. 5.404(*b*) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."). However, such evidence is generally admissible for purposes other than proving propensity; for instance, such evidence may be used to prove "motive, opportunity,

---

[1]As we have noted, the State alleged the offenses occurred between July of 2003 and August of 2005.

intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

We follow a well-established test to determine whether the photographs were admissible to prove the charge of indecent contact. First, we must ascertain "whether the challenged evidence [was] relevant and material to some legitimate issue" other than a general propensity to commit wrongful acts. *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988) (internal quotation marks and citation omitted). If this test is satisfied, the evidence was prima facie admissible, even though it illustrates the accused's bad character. *Id.* Second, we "must . . . decide whether the evidence's probative value [was] substantially outweighed by the danger of unfair prejudice." *Id.* (citing Iowa R. Evid. 5.403). If unfair prejudice resulting from admission of the evidence substantially outweighed its probative value, the evidence was inadmissible. *Id.*

We conclude the pornographic images of young girls had great probative value on the question of whether Elston touched A.E. "for the purpose of arousing or satisfying the sexual desires of either [himself or A.E.]." Iowa Code § 709.12. As noted above, defense counsel first raised during the cross-examination of A.E. the question of whether Elston might have accidentally touched A.E. between her clothed legs. The State's need to respond to Elston's assertion of accidental touching substantially increased the probative value of the pornographic photographs. The pornographic images of young females seized from the Neffs' computer during the execution of the search warrant tended to prove Elston's touching of A.E. was not accidental.[2]

---

[2]The seizure was made from the very computer Elston admitted he had used prior to the search to look at images of nude, undeveloped girls.

We are unconvinced that the photographs' considerable probative value would have been substantially outweighed by the danger of unfair prejudice had they been admitted in a separate trial on the indecent contact charge. The photographs were no more prejudicial than other evidence that was admitted at trial and that would have been admissible in a separate trial as evidence of Elston's intent. In particular, A.E. testified that Elston was present in the bedroom when Dale Neff took pornographic photographs of her. This evidence was considerably more prejudicial than the pornographic photographs of unknown female children, because it tended to prove Elston had a sexual interest in A.E., the very child whom he was charged with touching indecently.

In summary, we conclude the district court did not abuse its discretion in overruling Elston's motion to sever the sexual exploitation and indecent contact charges. The pornographic photographs were admissible to prove the indecent contact charge against Elston whether or not the trial of that charge was joined with the trial of the sexual exploitation charges. Elston failed to prove any prejudice resulting from joinder of the charges outweighed the State's interest in judicial economy.

**B.    Ineffective Assistance of Counsel.**

Elston's claims of ineffective assistance of counsel are before us on direct appeal. We usually preserve claims of ineffective assistance of counsel for potential postconviction proceedings. *State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994). However, if the record is sufficient to decide such claims, we will do so on direct appeal. *State v. Martens*, 569 N.W.2d 482, 484 (Iowa 1997).

*1.*    *Failure to Object to Testimony of Debra Krebs.*

The State called Debra Krebs, who testified Elston owned a collection of adult pornography. On appeal, Elston argues his trial counsel should have objected to this evidence pursuant to Iowa Rules of Evidence 5.402 (irrelevant evidence is inadmissible) and 5.403 (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice).

"[P]ostconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006). Such is the case here. Although trial counsel failed to object to this testimony, we are unable on this record to assess whether the failure constituted ineffective assistance of counsel. We consequently preserve this claim for possible postconviction proceedings.

*2.*    *Failure to Request Jury Instruction Explaining Proper Consideration of Evidence Related to the Dismissed Counts.*

Elston also claims his trial counsel provided ineffective assistance in failing to request a jury instruction explaining the proper consideration of evidence related to the dismissed sexual exploitation counts. In particular, he asserts trial counsel should have requested the district court to instruct the jury to disregard the pornographic pictures during deliberations on the indecent contact charge. We find no merit in this claim because we have already concluded the pictures were admissible as part of the State's proof of the indecent contact offense. *See State v. Wills*, 696 N.W.2d 20, 24 (Iowa 2005) (finding trial counsel was not ineffective in failing to raise unmeritorious issue).

*IV.    Conclusion.*

We conclude the district court did not abuse its discretion in denying the motion to sever.  We preserve one claim of ineffective assistance of counsel for possible postconviction proceedings.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**