# IN THE COURT OF APPEALS OF IOWA

No. 19-1353
Filed April 14, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMAR RONOD WISE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

        A defendant appeals his five felony and two aggravated-misdemeanor convictions. **AFFIRMED.**

        Fred Stiefel, Victor, for appellant.

        Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

        Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

The State accused Jamar Wise of committing eight crimes on four dates in January and February 2018. Concerned that a jury would be unable to "compartmentalize" the evidence, Wise moved to sever the counts for separate trials. But the district court opted to try all the counts together. A jury convicted Jamar Wise of seven crimes: second-degree sexual abuse, two second-degree robberies, third-degree robbery, ongoing criminal conduct, assault while participating in a felony, and assault with intent to commit sexual abuse. Wise appeals those convictions, challenging the denial of his severance motion. He also seeks a new trial on due process grounds because a juror allegedly saw him wearing a jail jumpsuit after the jury retired for deliberations.

Because the pattern of the crimes revealed a continuing motive, we find no abuse of discretion in the court's refusal to sever the counts. As for the due process claim, Wise did not ask for a mistrial in the district court, so we have no ruling to review on appeal. We thus affirm his convictions.

## I. Facts and Prior Proceedings

At trial, the prosecution presented evidence of four Waterloo convenience store robberies spanning four dates in 2018.

**January 29**: It was 6:30 a.m. A female clerk was working alone at the Metro Mart at 2332 Falls Avenue in Waterloo. A man dressed in black entered the store. He wore gloves, a mask, and a hooded sweatshirt with a Nike insignia on his left shoulder. He demanded: "Give me the fucking money." After grabbing the cash, the intruder ordered the clerk to "get in the bathroom." She refused. He left.

**January 31**:  It was 7:20 a.m.  A female clerk was working alone at the Neighborhood Mart at 2100 Lafayette Street in Waterloo.  A man dressed in black entered the store.  He wore rough tan gloves, a mask, and a hooded sweatshirt with a Nike swoosh.  He jumped onto the counter and grabbed the clerk's throat.  He then demanded: "Give me your money" and "get in the bathroom."  A store video captured his actions.  Police later matched a shoe print from the counter to the tread pattern of Wise's Adidas high tops.

**February 10**:  It was 6:20 a.m.  A female clerk was working alone at the B&B East convenience store at 1615 Bishop Avenue in Waterloo.  A man entered wearing all black clothing.  He wore gloves and a mask.  His sweatshirt had a logo.  He asked for the store videos and then said, "Give me the money."  As the clerk tried to open the register, the intruder put his gloved hand down the back of her pants and inserted his fingers into her vagina.  He also punched her twice in the face.  She woke up on the floor with her pants pulled down.

**February 27**:  It was 7:20 a.m.  A female clerk was working alone at the Prime Mart at 508 Broadway Street in Waterloo.  A man wearing a black sweatshirt with a Nike logo, black pants, gloves, and a mask entered the store.  He grabbed the clerk by the hair and touched her vagina over her leggings.  He tried to pull her pants down.  He then demanded money from the register, yelling "open it or I'm going to kill you."  After grabbing cash and cigarette packs, the intruder hopped over the counter and left.  The store video captured the man's actions inside.

Plus, the video showed a white rental car circling the lot.  Police discovered Wise had rented that car when his blue Ford Taurus was in the shop.  Police

obtained a warrant to attach a GPS tracking device to both cars. At 6:45 a.m. on March 20, the Taurus approached the YesWay convenience store at 117 East San Marnan Drive in Waterloo. Several unmarked police cars descended on the area. Officers saw a man, dressed all in black and wearing a mask, enter the store. The female clerk, who was working alone, happened to be outside checking the fuel pumps. When the man emerged from the store, he noticed an officer and took off running. During the chase, the suspect discarded his black mask and gloves. When police caught him, he was wearing a black Nike sweatshirt and Adidas shoes. Police identified the suspect as Wise.

The State filed an eight-count trial information. It alleged Wise committed second-degree robbery on January 29; third-degree robbery on January 31; first-degree sexual abuse and first-degree robbery on February 10; second-degree robbery, assault while participating in a felony, and assault with intent to commit sexual abuse on February 27; and ongoing criminal conduct from January 29 through March 20. (See chart below.)

Wise moved to sever those counts into five trials: one trial for each of the four robberies and a separate trial for the ongoing criminal conduct. *See* Iowa R. Crim. P. 2.11(2)(e). Wise argued that proof of the various crimes required separate witnesses. And he urged that a joint trial would risk unfair prejudice to his defense outweighing the State's interest in judicial economy. The State resisted, arguing the robberies were part of a "common scheme or plan" under Iowa Rule of Criminal Procedure 2.6(1). After a hearing, the district court denied the severance motion. A jury considered all eight counts in one trial.

The jury returned seven guilty verdicts and one acquittal.

| Trial Information | Crime Charged | Offense Date | Verdict |
|---|---|---|---|
| Count I | 1st-Degree Sexual Abuse | February 10 | Lesser offense: 2nd-Degree Sexual Abuse |
| Count II | 1st-Degree Robbery | February 10 | Lesser offense: 2nd-Degree Robbery |
| Count III | Ongoing Criminal Conduct | January 29 to March 20 | Guilty as charged |
| Count IV | 2nd-Degree Robbery | January 29 | Not guilty |
| Count V | 2nd-Degree Robbery | January 31 | Lesser offense: 3rd-Degree Robbery |
| Count VI | 2nd-Degree Robbery | February 27 | Guilty as charged |
| Count VII | Assault while participating in a felony | February 27 | Guilty as charged |
| Count VIII | Assault with intent to commit sexual abuse | February 27 | Guilty as charged |

Wise appeals those verdicts.

## II. Analysis

## A. Motion to Sever

Wise seeks a new trial because the district court refused to separate the State's eight charges into five trials. We review the court's refusal to sever multiple charges against a single defendant for an abuse of discretion. *State v. Romer*, 832 N.W.2d 169, 181 (Iowa 2013). To prove the court abused its discretion in refusing to sever charges, Wise bears the burden of showing the prejudice resulting from joining the offenses outweighed the State's interest in judicial economy. *See State v. Elston*, 735 N.W.2d 196, 199 (Iowa 2007).

To evaluate Wise's claim, we start with the rule on multiple offenses:

> Two or more indictable public offenses which arise from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan, when alleged and prosecuted contemporaneously, shall be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise.

Iowa R. Crim. P. 2.6(1).

Digging into that rule, the key phrase is "common scheme or plan." A common scheme or plan exists if all offenses charged are "products of a single or continuing motive." *Romer*, 832 N.W.2d at 181. Iowa cases have not set a high bar for identifying a "single or continuing motive." For example, in *State v. Lam*, 391 N.W.2d 245, 250 (Iowa 1986), our supreme court described the common scheme as "burglariz[ing] apartments during normal working hours." The court held it was "readily inferable that both offenses were products of a single and continuing motive for obtaining small portable objects from apartments for money." *Lam*, 391 N.W.2d at 250 Similarly, in *Elston*, the court upheld the joinder of sexual-exploitation and indecent-contact charges, finding the offenses were "motivated by his desire to satisfy sexual desires through the victimization of children." 735 N.W.2d at 199.

Along those lines, we can identify Wise's single or continuing motivation as obtaining money from convenience stores by targeting female clerks right at the start of their morning shifts. His consistent objective was to find women working alone and to terrorize them by yelling demands for money, invading their space behind the counter, trying to isolate them, and putting his gloved hands on their

bodies. Those common threads are more telling than the slight differences among the encounters that Wise highlights on appeal.

Besides continuing motive, when looking for a common scheme or plan we consider factors such as "modus operandi" and the temporal and geographic proximity of the crimes. *State v. Oetken*, 613 N.W.2d 679, 688 (Iowa 2000). We turn first to modus operandi, which "is often a highfalutin substitute" for method of operation. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 585 (3d ed. 2011). Our case law defines it as "a distinct pattern or method of procedure thought to be characteristic of an individual criminal and habitually followed by him." *State v. Cox*, 781 N.W.2d 757, 770 (Iowa 2010) (alteration omitted) (quoting *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988)). That distinct pattern shines through the four charged robbery offenses, and even echoes in Wise's aborted entry into the YesWay convenience store. Each time, Wise wore the same Nike sweatshirt, the same black mask, and the same textured gloves. He entered at roughly the same time of day. Without a weapon, he imposed his will on the lone female clerks. The near-signature nature of these offenses supports the finding of a common scheme.

We next consider the timeline for the robberies. As the district court noted in denying the severance motion, "all four robberies occurred within a month." That stretch of time does not detract from the common scheme or plan. *See Elston*, 735 N.W.2d at 199 n.1 (finding no abuse of discretion despite crimes being committed two years apart); *State v. Delaney*, 526 N.W.2d 170, 174 (Iowa Ct. App. 1994) (finding no abuse of discretion although "eight loan transactions covered an

eleven month period"). The temporal proximity of the crimes was close enough to confirm Wise's continuing motivation.

Turning to geographic proximity, all four convenience stores were in Waterloo. In moving to sever, Wise argued: "Needless to say, Waterloo is a medium sized community that covers a larger geographical area. The location of each robbery occurred in Waterloo however, there is nothing about the location that gives rise to show this is a common scheme or plan. Each store is in a different neighborhood." Contrary to Wise's argument, the geographic proximity of the robberies supports joinder of the charges. *See Romer*, 832 N.W.2d at 182 (finding State established geographic proximity though offenses occurred at the victim's home, a rock quarry, and at several other locations). As this map shows, the four locations circled the commercial heart of the city.[1]



---

[1] At trial, the State offered into evidence a separate map for each of the four convenience store locations. We have included this map to show the geographic proximity of the robbery locations. *See Wander v. Brady*, 105 N.W.2d 86, 89 (Iowa 1960) (taking judicial notice of geographical facts).

Before ending our common-scheme analysis, we address Wise's complaint about his conviction for ongoing criminal conduct. He argues, "Count 3 (ongoing criminal conduct) required the jury to look at all the evidence in all the counts during the entire time frame (January 31 to March 20). The other counts required the jury to 'compartmentalize' the evidence in deciding its verdict on each count." Exactly. And that is what the jury did. More than two decades ago, our supreme court recognized that ongoing criminal conduct in Iowa Code chapter 706A aimed to punish a pattern of illicit activity conducted with the same or similar purpose on a continuing basis. *State v. Reed*, 618 N.W.2d 327, 334–35 (Iowa 2000). The continuity among the predicate offenses for ongoing criminal conduct underscores the existence of a continuing motive for the joinder of those offenses.

A final note on prejudice. Wise argues joinder was prejudicial because some counts included stronger evidence pointing to him as the perpetrator. His argument overlooks the fact that the jury acquitted him of the robbery perpetrated on January 29, which involved perhaps the weakest identification evidence. Wise also highlights the greater violence of the February 10 incident. Again, he ignores the fact that the jurors returned verdicts on lesser included offenses for that date, signaling their ability to set emotion aside in assessing the evidence. Contrary to his contentions, the jury could, and *did*, compartmentalize the evidence among the various counts. Thus on the joinder issue, Wise fails to prove prejudice by a preponderance of the evidence.[2] *Oetken*, 613 N.W.2d at 689.

---

[2] Further undermining Wise's claim, the district court instructed the jury: "If you find the defendant guilty on any one of the eight counts, you are not to conclude the

### B. Due-Process Claim

After the jury retired for deliberations, it sent two questions to the court. When the judge was meeting with the lawyers and Wise on how to answer those questions, defense counsel made this record:

> Your Honor, if we could memorialize for purposes of the record the situation that occurred where we had a juror peek into the courtroom just now and kind of what the Court, after consulting informally with attorneys, did in response to the juror leaving the room, looking in here. My concern is that Mr. Wise is present but in jail clothes.

Responding to that concern, the court clarified that it directed the court attendant to remind the jurors not to leave their deliberation room unescorted. The court also described Wise's attire as a "black and gray striped jail jumpsuit." The court assumed that the juror glancing through the courtroom window would have been able to see Wise only from the waist up as he sat at counsel's table. When the court asked defense counsel and the prosecutor if they wanted to put anything else on the record, both responded no.

Despite not asking for any remedy from the district court, Wise now contends he is entitled to a new trial because the juror's observation violated his right to due process. No question, "[r]equiring a defendant to appear in prison clothing creates an unacceptable risk the jury may consciously or subconsciously be influenced in their deliberations." *State v. Johnson*, 534 N.W.2d 118, 126 (Iowa Ct. App. 1995) (citing *Estelle v. Williams*, 425 U.S. 501, 512 (1976)). Even if the

---

defendant is guilty or not guilty on the other(s). You must decide whether the defendant is guilty or not guilty separately on each count." We presume the jury followed its instructions. *See State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012).

juror's glimpse of Wise in his prison jumpsuit was inadvertent, the risk of prejudice may have warranted a request for an admonition, or even a motion for mistrial—if the defense believed that was an appropriate approach. *See id.* (noting decision not to renew request for admonition as strategic). But Wise's attorney did not seek any action from the court. And Wise does not raise this issue as an ineffective-assistance-of-counsel claim on appeal. We thus have nothing to review. *See State v. Holbrook*, 261 N.W.2d 480, 482 (Iowa 1978).

**AFFIRMED.**