# IN THE COURT OF APPEALS OF IOWA

No. 21-0213
Filed March 30, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BENJAMIN ROY MONSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Colleen Weiland, Judge.

Benjamin Monson appeals his convictions for two counts of third-degree sexual abuse. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Benjamin Monson appeals his convictions for two counts of third-degree sexual abuse. He alleges the district court abused its discretion by denying his motion to sever the charges for separate trials. Because Monson has failed to demonstrate that any prejudice arising from joinder outweighed the State's interest in judicial economy, we affirm his convictions.

### I. Background Facts and Proceedings.

The State charged Monson with two counts of third-degree sexual abuse arising from alleged non-consensual sex with two different intoxicated women two weeks apart. *See* Iowa Code § 709.4(1) (2018). High school student D.B. and college student A.T. did not know each other. Each spent a different night drinking alcohol with Monson in the fall of 2018 and afterwards reported that Monson sexually abused her. After DNA results linked Monson to both young women, he claimed that he had consensual sex with each of them the morning before the alleged incidents and not at the times that they alleged.

Monson moved to sever the charges for separate trials. The district court denied the motion and found him guilty as charged after a bench trial. Monson timely filed the appeal now before us.

### II. Review.

We review a district court's "refusal to sever multiple charges against a single defendant for abuse of discretion." *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013) (quoting *State v. Elston*, 735 N.W.2d 196, 198 (Iowa 2007)). "To prove the district court abused its discretion in refusing to sever charges, [the defendant] bears the burden of showing prejudice resulting from joinder outweighed the

State's interest in judicial economy." *Id.* at 181 (alteration in original) (citation omitted). Moreover, "[a]n abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Mulatillo*, 907 N.W.2d 511, 518 (Iowa 2018) (citation omitted).

### III. Analysis.

Iowa's approach to joinder has been set forth in a series of Iowa Supreme Court opinions cited by both parties. *See Romer*, 832 N.W.2d at 181–83; *Elston*, 735 N.W.2d at 198–200; *State v. Lam*, 391 N.W.2d 245, 249–51 (Iowa 1986). As explained therein, Iowa follows a bifurcated approach whereby the court first determines whether joinder is permissible, and if so, considers whether joinder would nonetheless result in unfair prejudice and require severance. *See Romer*, 832 N.W.2d at 181–83.

In molding this approach, the Iowa Supreme Court has squarely rejected an Iowa Rule of Evidence 5.404(b) analysis in the formula. *See id.* at 183 ("His only arguments in this area pertain to our evidentiary rule on propensity, which we have unequivocally established as distinct from an analysis under our law dealing with joinder of offenses."); *Lam*, 391 N.W.2d at 249 ("The two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with joinder of offenses inappropriate." (citation omitted)). Monson contends that *Romer*, *Elston*, and *Lam* were incorrectly decided with respect to the

irrelevance of a rule 5.404(b) analysis in assessing the propriety of joinder.[1] However, this law is controlling. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

Monson suggests that the Iowa Supreme Court's ruling in *State v. Cox* regarding the admission of prior sexual offenses should similarly exclude Monson's sexual abuse of another victim and require severance of the charges. 781 N.W.2d 757, 772 (Iowa 2010). However, even after *Cox* was decided in 2010, the Iowa Supreme Court reaffirmed its joinder analysis in *Romer* in 2015, and no subsequent factual or legal developments have mandated a different framework. *See Romer*, 832 N.W.2d at 183; *State v. Cook*, No. 17-1524, 2018 WL 6120243, at *1 (Iowa Ct. App. Nov. 21, 2018) (finding that "based on the potential duplication of witnesses in separate trials and the trial court's ability to caution jurors at trial concerning their deliberations on each count, the Court finds the State's judicial economy concerns outweigh the prejudice of having one trial with two complaining witnesses").

With the law settled, we find no abuse of discretion in the district court's application. Pursuant to Iowa Rule of Criminal Procedure 2.6(1), the State may prosecute contemporaneously two or more offenses that arise from a common scheme or plan. *Lam*, 391 N.W.2d at 249. In analyzing whether a common

---

[1] The State asserts Monson's argument in this regard was not properly preserved. However, "it would make little sense to require a party to argue existing law should be overturned before a court without the authority to do so." *State v. Williams*, 895 N.W.2d 856, 872 n.2 (Iowa 2017). Regardless, we decline to disturb existing precedent.

scheme or plan exists, "we have found it helpful to consider factors such as intent, modus operandi, and the temporal and geographic proximity of the crimes." *Elston*, 735 N.W.2d at 199 (quoting *State v. Oetken*, 613 N.W.2d 679, 688 (Iowa 2000)). Essentially, we consider whether the defendant "carried out similar acts in similar ways." *State v. Umana*, No. 11-9667, 2012 WL 4513859, at *6 (Iowa Ct. App. Oct. 3, 2012).

However, there should also be a "common link," which is usually described as behavior emanating from "a single or continuing motive." *Oetken*, 613 N.W.2d at 688. In this regard, "Iowa cases have not set a high bar." *State v. Wise*, No. 19-1353, 2021 WL 1400771, at *2 (Iowa Ct. App. Apr. 14, 2021). Examples include a "desire to satisfy sexual desires through the victimization of children" in both *Romer*, 832 N.W.2d at 182, and *Elston*, 735 N.W.2d at 199, and the intent to obtain "small portable objects from apartments for money" in *Lam*, 391 N.W.2d at 250.

Here, the court found that the charges against Monson arose out of a common scheme or plan. Specifically, the alleged acts occurred with temporal and geographic proximity, as they were within fifteen days of each other and about four miles apart. The State alleged that Monson exhibited a single or continuing motive and utilized the same modus operandi by secluding and victimizing extremely intoxicated young female acquaintances for his sexual gratification after providing them with alcohol. The district court also noted the significance of Monson claiming the same defense in each instance: 1) consensual sex with each alleged victim in the morning, and 2) intoxication, for the purpose of any possible lesser included offense requiring specific intent. Given these circumstances, we find no abuse of discretion in the trial court's determination.

Upon finding joinder was permissible, the next step was to determine whether prejudice outweighed the State's interest in judicial economy. By their very nature, prior bad acts involving sexual offenses are prejudicial. However, we agree that the introduction of Monson's alleged prior bad act did not rise to the level of prejudice outweighing the judicial economy of one trial. The State indicated that, in addition to the two victims, two of the investigating officers, the DNA criminalist, the crime scene technician, and the defendant's expert on intoxication would have been called to testify at both trials. *See Romer*, 832 N.W.2d at 183 (holding a "single trial was in the interest of judicial economy as it was then unnecessary to require numerous witnesses to testify at multiple trials"). Finally, any prejudice arising from joinder was minimized by Monson's bench trial. *See State v. Geier*, 484 N.W.2d 167, 172–73 (Iowa 1992) (finding that in a bench trial, "there is less likelihood that a failure to sever has prejudiced the defendant than in a trial to a jury. By virtue of training and experience, the court is better able to compartmentalize the evidence regarding the various charges and guard against the prejudice a severance seeks to prevent.").

Because Monson has failed to demonstrate that any prejudice arising from joinder outweighed the State's interest in judicial economy, we find no abuse of discretion in the district court's refusal to sever his charges.

**AFFIRMED.**