# IN THE COURT OF APPEALS OF IOWA

No. 15-1275
Filed January 11, 2017

**MATTHEW LOUIS BANKER,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Johnson County, Nancy A. Baumgartner, Judge.

Matthew Banker appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

Matthew Banker attended a party in Iowa City. Following the party, two women notified police that Banker sexually assaulted or attempted to sexually assault them. The State charged Banker with third-degree sexual abuse and assault with intent to commit sexual abuse, and a jury found him guilty as charged. This court affirmed his judgment and sentence and preserved two ineffective-assistance-of-counsel claims for postconviction relief. *See State v. Banker*, No. 11-0355, 2012 WL 2122369, at *1 (Iowa Ct. App. June 13, 2012).

Banker filed an application for postconviction relief, asserting his trial attorney was ineffective in several respects. The postconviction court denied Banker's claims following an evidentiary hearing.

On appeal, Banker contends his trial attorney was ineffective in failing to (1) move for separate trials, (2) invoke an exception to Iowa's "rape shield" rule, (3) impeach the testimony of one of the witnesses, (4) call an expert to testify about the "blackout effect" associated with over-consumption of alcohol, and (5) seek exclusion of a surreptitious recording of him. He also contends cumulative errors mandate reversal.

To prevail, Banker must show (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element." *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015).

We elect to resolve the issues under the *Strickland* prejudice prong. We begin by examining whether Banker established prejudice on each claim, then

we proceed to a cumulative error analysis. *See State v. Clay*, 824 N.W.2d 488, 500, 501-02 (Iowa 2012) (citing with approval precedent in which "we analyzed all [ineffective assistance] claims individually and cumulatively" and stating because we are analyzing "the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty, [we] can only dismiss the postconviction claim if the alleged errors, cumulatively, do not amount to *Strickland* prejudice"). Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## A.    *Ineffective Assistance of Counsel*

*1. Severance.* Banker contends his trial attorney should have moved to sever the two charges. He relies on Iowa Rule of Evidence 5.404(b), which provides that evidence of other acts "is not admissible to prove the character of a person in order to show that the person acted in conformity there with," but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." He argues, "[T]here was no 'legitimate issue' that would allow the State to use evidence of a similar crime against [him] in separate trials."

The Iowa Supreme Court rejected a virtually identical argument in *State v. Romer*, 832 N.W.2d 169, 183 (Iowa 2013). After reiterating the distinction between our bad acts rule, Iowa Rule of Evidence 5.404(b), and our severance rule, Iowa Rule of Criminal Procedure 2.6(1), the court stated:

> [W]e have previously found that an attempt to equate our evidentiary rule's principles with rule 2.6(1)'s principles is inapposite. "This evidentiary rule deals with what evidence is

> properly admissible to prove the crime charged. The joinder of offenses rule deals with the more basic question of what crimes can be charged and tried in a single proceeding . . . . The two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with joinder of offenses inappropriate."

*Romer*, 832 N.W.2d at 183 (quoting *State v. Lam*, 391 N.W.2d 245, 249 (Iowa 1986)). In discussing nonconstitutional prejudice under the severance rule, the court declined to employ an analysis premised on rule 5.404(b), focusing instead on the relevancy of the evidence, the "legally intertwined" nature of the evidence, and the district court's submission of a cautionary instruction. *See id.*; *cf. State v. Elston*, 735 N.W.2d 196, 199-200 (Iowa 2007) (applying rule 5.404(b) balancing test and finding under the test certain evidence was "admissible to prove the indecent contact charge against [the defendant] whether or not the trial of that charge was joined with the trial of the sexual exploitation charges"). The court concluded the defendant did not show "unfair prejudice by joining the interrelated eight counts into one trial." *Romer*, 832 N.W.2d at 183.

We will apply the nonconstitutional prejudice factors set forth in *Romer* to determine whether, under *Strickland*, there is a reasonable probability a motion to sever would have been granted had one been filed. The assaults on the two women occurred on the same night, in the same house, and under similar circumstances. One woman was in the basement with her boyfriend; the other was upstairs on a couch. Both testified that a man placed his hand on their stomachs and engaged in sexual touching below their belt lines. Although the facts underlying one count were not essential to establishing the second count,

the *Romer* court found complete congruence unnecessary. *See id.* at 182. The court stated, "Even if some of the evidence needed to prove count I was irrelevant to whether [the defendant] committed the acts he was charged with in count IV, for example, the State had the right to charge multiple counts in the same offense, to achieve judicial economy." *Id.* The same is true here. The two acts were sufficiently intertwined to conclude the district court would not have abused its discretion in denying a motion to sever. Finally, as in *Romer*, the district court cautioned the jury about its obligation with respect to each count, instructing the jury as follows:

> The Defendant has been charged with two (2) counts. This is just a method for bringing each of the charges to trial. If you find the Defendant guilty o[r] not guilty on any one of the two counts, you are not to conclude the Defendant is guilty or not guilty on the other count. You must determine whether the Defendant is guilty or not guilty separately on each count.

We acknowledge this instruction did not address the danger of propensity evidence underlying rule 5.404(b). However, the language conveyed this concern by exhorting jurors not to find that because Banker may have committed one crime he also committed the other crime. *See Thomas v. State*, No. 11-0275, 2012 WL 836839, at *8 (Iowa Ct. App. Mar. 14, 2012) (concluding the identical instruction "minimiz[ed] any possible prejudice" associated with the denial of a severance motion).

We conclude there is no reasonable probability a motion to sever would have been granted had one been filed. *See Crawley v. State*, No. 05-1666, 2007 WL 2376671, at *3 (Iowa Ct. App. Aug. 22, 2007).

***2. Iowa Rule of Evidence 5.412.*** Banker sought to elicit testimony from one of the women about her sexual activity with her boyfriend shortly before the assault. Following an objection by the prosecutor and an off-the-record discussion, Banker withdrew the question.

Banker contends his attorney should have invoked an exception to the rule that prohibits this type of evidence. *See* Iowa R. Evid. 5.412. The rule, commonly known as the "rape shield law," precludes the admission of "reputation or opinion evidence of the past sexual behavior of an alleged victim of sexual abuse." Iowa R. Evid. 5.412(a). The rule also precludes the admission of "evidence of a victim's past sexual behavior other than reputation or opinion evidence" unless the evidence is "[a]dmitted in accordance with [certain requirements of the rule] and is constitutionally required to be admitted." Iowa R. Evid. 5.412(b)(1). In Banker's view, testimony concerning the woman's sexual activity with her boyfriend was "constitutionally required" because the evidence furnished "good reason for [the woman] to wonder whether a sexual assault 'really happened.'"

The postconviction court addressed this argument as follows:

> When considering the issue of whether the evidence is constitutionally required to be admitted pursuant to Iowa R. Evid. 5.412(b)(1), "[t]he defendant's constitutional rights must be weighed against the recognized interest that the State has 'to (1) protect the privacy of the victims; (2) encourage the reporting and prosecuting of sex offenses; and (3) to prevent time consuming and distracting inquiry into collateral matters.'" *State v. Jones*, 490 N.W.2d 787 (1992) (citing *State v. Gettier*, 438 N.W.2d 1, 3 (Iowa 1989)). "A trial court can properly exclude evidence of the victim's prior sexual histories if the evidence were either irrelevant or more prejudicial than probative." *Id.*; Iowa R. Evid. 5.412(c)(3).

The court found the evidence irrelevant to the question of whether a sexual assault occurred. After engaging in a detailed factual analysis, the court concluded there was "little likelihood that the evidence of prior sexual intercourse with [the boyfriend] would have been admitted, even had counsel known to follow the requirements of rule 5.412." We fully concur in the court's reasoning. We conclude there is no reasonable probability of a different outcome had Banker's trial attorney properly moved to admit the woman's testimony about her prior sexual conduct under the specified exception to rule 5.412.

3. **Impeachment of Testimony.** In a similar vein, Banker challenges his trial attorney's failure to impeach the same woman with her prior statement to police. In the earlier statement, the witness described Banker's position in the bed she shared with her boyfriend and mentioned other details that Banker characterizes as "bizarre" and "absolute[ly] absurd[]."

The postconviction court found Banker's argument to be "a bit of a stretch." We are inclined to agree. Banker's attorney raised one important and potentially improbable detail in the statement during his cross-examination of the officer who questioned the woman. Although the attorney did not ascribe this detail to the woman, the jury reasonably could have discerned the source of the information from the context. Other details in the woman's prior statement did not detract from the essence of her trial testimony. The woman described the assault in precise terms, leaving little doubt that someone other than her boyfriend committed the act. The following morning, the woman discovered an open flip phone next to the bed. On dialing "Mom" and asking whose phone it was, she learned the phone belonged to Banker. At the postconviction relief

hearing, Banker was asked whether he disputed the cell phone evidence. Banker responded, "I do not have any memories that would . . . confirm or deny that." After the assault, Banker came to the house and apologized for his conduct. At the postconviction relief hearing, he was asked, "did you tell . . . a number of people that you felt bad . . . that something like that had happened to these girls." Banker responded, "In a sense, yeah." Two witnesses also testified that, when Banker returned, he went directly to the basement to retrieve his cell phone. We conclude there is no reasonable probability of a different outcome had counsel impeached the woman with her prior statement to police.

*4. Failure to Present Expert Testimony on Blackouts.* Banker challenges his trial attorney's failure to present expert testimony concerning the effects of heavy alcohol consumption. According to Banker, the testimony would have provided "a scientific/medical explanation for [his] loss of memory as to key events." Banker further claims his lack of memory "was an overwhelming factor for counsel's advice that [he] not take the witness stand [because] Banker's persistent answers of inability to remember events would lead the jury to conclude he was not being truthful," and expert testimony "would have allowed the jury to naturally conclude [his] loss of memory was due to the blackout effect."

At the postconviction relief hearing, Banker's trial attorney testified that he consulted an expert about Banker's "diminished capacity because of his intoxication." According to counsel, the expert was "adamant that he could not help" because counsel "could not quantify the number of drinks or amount of alcohol [Banker] had consumed in a definitive period of time." While counsel

acknowledged he did not discuss a possible blackout effect with the expert, this type of testimony also would have been contingent on knowledge of the precise amount of alcohol Banker consumed. The postconviction court addressed the prejudice prong with respect to this claim at length. Again, we fully concur in the court's analysis. We conclude there is no reasonable probability a trial expert testifying to the blackout effect would have changed the outcome. *See, e.g.*, *Heaton v. State*, 420 N.W.2d 429, 432 (Iowa 1988) ("[I]n view of the trial court's reliance on petitioner's own statements which impeached his testimony as to a blackout, we fail to see any prejudice caused by his attorney's failure to obtain the services of an expert.").

 **5. *Failure to Seek Exclusion of Recording.*** Banker challenges his trial attorney's failure to seek exclusion of an audio recording made by a boyfriend of one of the women. Wearing a wire, the boyfriend asked Banker whether he had done more than "finger[]" the woman's vagina. Banker responded, "I honestly do not think so."

 Banker contends the recording was inadmissible under Iowa Rule of Evidence 5.403, which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Banker relies on *State v. Cromer*, 765 N.W.2d 1, 6-11 (Iowa 2009), in which the court found an attorney ineffective where the attorney failed to object to the admission of a recorded telephone conversation between the defendant and victim.

 The postconviction court found *Cromer* distinguishable and provided a comprehensive analysis of the differences. We agree with this analysis. *See*

*also State v. Cain*, No. 14-1506, 2015 WL 5285763, at *1-2 (Iowa Ct. App. Sept. 10, 2015) (distinguishing *Cromer*). However, even if this case were on all fours with *Cromer*, there is no reasonable probability that a successful objection to the admission of the recording would have changed the outcome. Even without the recording, jurors heard the women's detailed testimony about the assaults and could have considered the cell phone evidence and Banker's apologies.

## B.    Cumulative Error

Banker contends cumulative error denied him a fair trial. *See Clay*, 824 N.W.2d at 500. We disagree and adopt the postconviction court's analysis as our own:

> The State's case against Banker was strong, despite the fact N.F. [the woman in the basement with her boyfriend] could not identify her assailant. Both N.F. and A.R. [the woman in the living room] described very similar circumstances in which they were awakened from sleep by the sensation of a hand on their stomachs, with the hand eventually reaching down toward their genital area. Banker's phone was found on the floor near the bed in [N.F.'s boyfriend's] bedroom. [The boyfriend] and N.F. testified it was not there when they went to bed. There is no evidence other than speculation that would support an argument that someone else placed the phone in the basement. Even if Banker testified at trial and the jury believed that he did not go directly to [the boyfriend's] room to look for his cell phone the next day, evidence of what transpired in the days following the assault presented a substantial challenge for the defense. Despite having little to no memory of what occurred the previous evening, Banker made his way back to the house the next day to search for his cell phone. When Banker went to [the boyfriend's] house on Monday evening and talked to N.F., Banker asked if she was [the boyfriend's] girlfriend. When she said that she was, he told her he was sorry for what he did. This was *before* Banker knew he had been accused of anything. N.F. immediately asked him if he knew what he did. Banker replied he did not know, but that it was something bad. After N.F. told him what he did, he did not register shock or denial. After N.F. shut the door on him, he knocked again, asked for [the boyfriend], and told him he wanted to apologize to him. Once the police became involved, Banker repeated his statement that he had done something very bad to

[the officer]. Finally, when confronted with a pointed question from [the boyfriend] regarding whether he had done anything more than finger N.F., Banker's reply was that he didn't think he did anything more than that. Despite having multiple contacts with the various people at [the boyfriend's] residence, Banker never denied having sexual contact with N.F., never asserted he was not the kind of person that would do that sort of thing, and never said he had not committed the acts of which he was accused. It is clear that there is little Banker's testimony could have done to assist in his defense. Banker does not deny that he repeatedly apologized for his behavior. He does not deny that he made the statement on the audio recording. He acknowledged that he would not have been able to provide any testimony to account for the fact his cell phone wound up in the basement bedroom of a person he hardly knew. These critical and damaging facts would be present even if trial counsel had done the things Banker alleges are a failure of an essential duty. Even if Banker had proved that trial counsel failed in an essential duty, he has not proved there is a reasonable probability that the outcome of the trial would have been different.

We concur in this cumulative error analysis. We affirm the postconviction court's denial of Banker's ineffective-assistance-of-counsel claims.

**AFFIRMED.**