# IN THE COURT OF APPEALS OF IOWA

No. 15-1301
Filed October 11, 2017

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**TRAVON JAMES JONES,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Black Hawk County, Andrea Dryer, Judge.

 Defendant appeals his convictions for first-degree robbery, first-degree burglary, and intimidation with a dangerous weapon with intent. **AFFIRMED.**

 Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

 Travon J. Jones, Anamosa, appellant pro se.

 Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

 Heard by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Travon Jones appeals his convictions for first-degree robbery, first-degree burglary, and intimidation with a dangerous weapon with intent. We find Jones's convictions were supported by substantial evidence. We conclude Jones has not shown he received ineffective assistance because defense counsel did not (1) object to the instructions on aiding and abetting and joint criminal conduct; (2) argue Jones could not be convicted of first-degree robbery under a theory of joint criminal conduct because a codefendant had been convicted of second-degree robbery; and (3) object to the State's use of a statement by the codefendant, who was excluded as a witness. Jones's other claims of ineffective assistance are preserved for possible postconviction proceedings.

**I.     Background Facts & Proceedings**

On about December 19, 2014, there was a fight between Kenneth Weekley and Jonathon Reins at Reins's home, where he was living with his mother, Nicole Fordyce. Reins testified he beat up Weekley. He stated Weekley showed him a gun during this time period. The next day, December 20, Weekley, Darrion Morrissey, and Jones came to Fordyce's home, where Fordyce, Reins, and Marqwane Smith were present. There was an argument between Jones and Reins. Morrissey yelled at Fordyce and gestured at her with his fist. Smith pulled out a gun. Weekley, Morrissey, and Jones then left. Reins testified people were still angry.

On December 22, at about 10:00 p.m., Fordyce heard glass breaking. She looked out of her bedroom and saw Weekley, Morrissey, and Jones creeping up the stairs. Fordyce told Reins and his girlfriend to hide in the

bathroom. Jones asked Fordyce, "Where the f*ck is Jon?" but she stated she did not know. Fordyce testified she was afraid because she knew the three intruders sometimes carried guns. She went into her bedroom, locked the door, and called 911. The intruders went into Reins's bedroom and took an Xbox game system, a purse, and a cell phone. They then left the house and got into a white Oldsmobile Alero. From the street, one of the men fired at least four shots into Reins's bedroom with a .22 caliber handgun, leaving bullet holes in the wall above his bed.

Shortly after midnight, Officer Kenneth Schaaf of the Waterloo Police Department saw the white Oldsmobile Alero at a gas station. After seeing Officer Schaaf, the vehicle left at a high rate of speed. The vehicle, driven by Jones, was eventually stopped. Weekley, Morrissey, and Tyvon Campbell were the passengers in the vehicle. Three .22 caliber shell casings were found in the vehicle. Jones, Weekley, and Morrissey were arrested.

From jail, Jones called his girlfriend and stated, "If you get a chance, have our bro walk down the alley." Morrissey also provided officers with information leading them to discover a .22 caliber handgun hidden behind a trellis in an alley behind Jones's home. Ballistics analysis by the Iowa Division of Criminal Investigation (DCI) showed the shell casings in the vehicle driven by Jones came from the handgun found by officers.

During the criminal trial, Jones testified he did not have a dispute with Reins but stated Weekley and Reins "got into it a few times." He stated he went with Weekley and Morrissey to Fordyce's house on December 20 to "try to keep them out of trouble." Jones stated Reins and Weekley made up but Morrissey

and Fordyce began yelling at each other. He testified he went to Fordyce's house with Weekley, Morrissey, and Campbell on December 22 because Smith asked him to meet Smith there and Jones was expecting an argument with Smith. Jones stated he did not know how the glass in the front door was broken. He stated he went inside the home, saw Fordyce, asked her where Reins was, then went back out to the car, which he had driven. Jones also testified he was completely taken by surprise by the gunshots.

A jury found Jones guilty of robbery in the first degree, in violation of Iowa Code section 711.2 (2014), burglary in the first degree, in violation of section 713.3, and intimidation with a dangerous weapon with intent, in violation of section 708.6. The district court denied Jones's motion for a new trial. Jones was sentenced to terms of imprisonment not to exceed twenty-five years, twenty-five years, and ten years on the respective charges, to be served concurrently. He now appeals his convictions.

## II.     Sufficiency of the Evidence

We review a district court's ruling on a motion challenging the sufficiency of the evidence for the correction of errors at law. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). "In reviewing challenges to the sufficiency of the evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* at 439-40. We will uphold a jury's verdict if it is supported by substantial evidence in the record. *Id.* at 440. Substantial evidence is defined as "proof which could convince a rational trier of fact that the

defendant is guilty of the crime charged beyond a reasonable doubt." *State v. Cartee*, 577 N.W.2d 649, 651 (Iowa 1998).

**A.** Jones claims there is not sufficient evidence in the record to support his conviction for first-degree burglary. The instructions permitted the jury to find Jones guilty of first-degree burglary either as a principal or as someone who aided and abetted others in the commission of the offense. The instructions required a finding Jones entered Fordyce's house "with the specific intent to commit an assault or aided and abetted another knowing the other had the specific intent to commit an assault." Jones claims the State did not prove he or anyone else had the intent to commit an assault when they entered Fordyce's home.

"Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Grant*, 722 N.W.2d 645, 647-48 (Iowa 2006). "A factfinder may infer an intent to commit an assault from the circumstances of the defendant's entry into the premises and his acts preceding and following the entry." *State v. Finnel*, 515 N.W.2d 41, 42 (Iowa 1994). A person engages in knowingly aiding and abetting by either active participation in a crime or by encouraging the crime prior to or at the time of its commission. *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994).

Jones's entry into Fordyce's home, along with Weekley and Morrissey, was the culmination of several days of arguments between the three men and Reins and Fordyce. Reins testified people were still angry when Jones, Weekley, and Morrissey left Fordyce's home two days earlier. Jones drove

Weekley and Morrissey over to Fordyce's home on the evening of December 22. Jones testified he heard the glass of Fordyce's front door break while he was near the front step. Although he was aware his friends were breaking into the home and they were angry with Reins and Fordyce, he entered the home as well. From the evidence, the jury could infer Jones entered the home with the intent to commit an assault in order to continue the physical altercations he, Weekley, and Morrissey had been having with Reins and Fordyce. Jones's claim he went to Fordyce's home looking for Smith is not credible because when he saw Fordyce in the home, he asked her where Reins was, rather than make an inquiry about Smith. We determine there is substantial evidence in the record to support the jury's verdict finding Jones guilty of first-degree burglary both acting as a principal and aiding and abetting Weekley and Morrissey.

**B.** Jones claims his conviction for first-degree robbery is not supported by the evidence. Under the instructions, the jury could find Jones committed the crime as a principal or he was engaged in joint criminal conduct. Jones states there is not sufficient evidence to show he, Weekley, or Morrissey threatened anyone or purposely placed anyone in fear of immediate serious injury in order to commit a theft or to assist in their escape from the scene. *See* Iowa Code § 711.1 (defining robbery). He also states he was not aware Weekley and Morrissey intended to commit theft.

Joint criminal conduct "contemplates *two* acts—the crime the joint actor has knowingly participated in, and a second or resulting crime that is unplanned but could reasonably be expected to occur in furtherance of the first one." *Satern*, 516 N.W.2d at 843. We have already determined there is sufficient

evidence to show Jones committed one crime, burglary. There is substantial evidence in the record to show the second crime, robbery, could reasonably be expected to occur in furtherance of the commission of the burglary. After Weekley or Morrissey, or both, broke in the door, Jones testified he asked them, "What is you all doing?" and Weekley responded he wanted "to get his stuff because he used to live there." Jones was then aware Weekley intended to take things out of the home. Also, Reins testified Morrissey entered his bedroom and said, "I need all this."

Furthermore, one of the intruders fired shots at Reins's bedroom from outside the home. The shots left bullet holes in Reins's bedroom wall, where his head would have been if he had been in bed. Any assault which helps a defendant get away turns a theft into robbery. *State v. Terry*, 544 N.W.2d 449, 452 (Iowa 1996). "[W]hether an assault assisted the defendant's escape or occurred after the escape was complete is a question of fact for the jury." *Id.* The jury could have concluded the gunshots helped Jones and his friends escape from the scene without interference. We determine there is substantial evidence in the record to support the jury's verdict finding Jones guilty of first-degree robbery.

**C.** Jones claims there was not sufficient evidence in the record to support his conviction for intimidation with a dangerous weapon with intent. For this offense, the jury was again instructed on a theory of joint criminal conduct. Jones states there was no evidence he was acting in concert with another person to participate in a burglary or to intimidate anyone with a dangerous weapon. Jones claims Morrissey shot the firearm and he acted alone.

As noted above, we have determined there is sufficient evidence to show Jones committed the crime of burglary. For joint criminal conduct, we consider whether there is substantial evidence in the record to show the second crime, intimidation with a dangerous weapon with intent, could reasonably be expected to occur in furtherance of the commission of the burglary. *See Satern*, 516 N.W.2d at 843. There was evidence Weekley showed Reins a gun on December 19, and in regard to December 22, Reins testified, "Kenny always kept it on him everywhere he went, so I don't see why he wouldn't have it on him that same night." Fordyce also testified Jones, Weekley, and Morrissey "were known to carry guns." At least one of the men was armed with a gun and fired gunshots at Fordyce's house. Based on this evidence, the jury could reasonably find Jones could have expected the crime of intimidation with a dangerous weapon with intent to be committed in furtherance of the commission of the first crime, burglary. We conclude there is substantial evidence in the record to support Jones's conviction for intimidation with a dangerous weapon with intent.

### III.    Exclusion of a Witness

The trial information, filed on January 2, 2015, charged Jones, Weekley, and Morrissey as codefendants. Morrissey entered into a plea agreement, pled guilty to certain charges, and was sentenced. Jones's trial was set for June 9, 2015.[1] On June 3, Jones filed notice of his intention to call Morrissey as a

---

[1] After a period of time, Jones waived his right to a speedy trial. He later revoked his waiver, and his trial was then set for June 9, 2015. Jones was scheduled to be tried jointly with Weekley. Weekley's counsel developed a medical issue and Weekley's trial was continued but Jones's trial was held as scheduled due to speedy trial concerns.

defense witness. The State filed a motion to exclude Morrissey as a witness, stating it was "unfairly prejudiced by the extremely late notice provided."

A hearing was held on the matter before the district court. Jones stated he expected Morrissey to be called as a witness for the State, although he was not formally listed by the State. Jones stated he eventually became aware the State was not going to call Morrissey. After Morrissey was sentenced on May 13, defense counsel contacted him about testifying in Jones's trial. Jones asserted the State could depose Morrissey during the trial, prior to testifying. The district court granted the motion to exclude Morrissey as a witness, noting even if Morrissey was deposed during the trial, the State needed time to investigate his statements and the time to do so was limited because Jones had reinvoked his right to a speedy trial. The court concluded it would be unduly prejudicial to the State to permit Morrissey to testify and "there is no less severe remedy that's adequate to protect the State from the unfair prejudice by the late notice of defense witness provided in this case." Jones did not make an offer of proof of Morrissey's proposed testimony.

Jones claims the district court abused its discretion by granting the State's motion to exclude Morrissey as a defense witness. He contends the State had time to depose Morrissey. He claims the State could have again moved to exclude Morrissey or sought to limit his testimony after the deposition. Jones states the court did not need to entirely exclude Morrissey's testimony. Jones asserts he was prejudiced by the court's decision.

Under Iowa Rule of Criminal Procedure 2.13(3), a defendant is required to submit a list of witnesses expected to be called for the defense. Rule 2.13(4) provides:

> If the defendant has taken depositions under rule 2.13(1) and does not disclose to the prosecuting attorney all of the defense witnesses (except the defendant and surrebuttal witnesses) at least nine days before trial, the court may order the defendant to permit the discovery of such witnesses, grant a continuance, or enter such other order as it deems just under the circumstances. It may, if it finds that no less severe remedy is adequate to protect the state from undue prejudice, order the exclusion of the testimony of any such witnesses.

Jones had taken depositions, so rule 2.13(4) applies. A court may exercise its discretion in fashioning an appropriate sanction for a defendant's failure to comply with rule 2.13(4). *State v. Babers*, 514 N.W.2d 79, 82 (Iowa 1994). We will reverse the court's ruling only if there has been an abuse of discretion. *Id.* "An abuse of discretion will not generally be found unless the party whose rights have been violated suffered prejudice." *Id.* The exclusion of an "eleventh-hour witness" "is expressly provided to protect the State from undue prejudice." *State v. Braun*, 495 N.W.2d 735, 742 (Iowa 1993). Jones did not give timely notice he intended to call Morrissey as witness. The court carefully considered the circumstances and concluded there was no less severe remedy that was adequate to protect the State from the unfair prejudice created by the late notice. We conclude the court did not abuse its discretion in excluding Morrissey as a defense witness.

## IV. Ineffective Assistance

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a

claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

**A.** Jones claims he received ineffective assistance because defense counsel did not object to the instructions on aiding and abetting or joint criminal conduct. He states the instructions were improperly given because there was not sufficient evidence to submit these theories to the jury.

We have determined there is sufficient evidence in the record to support Jones's convictions under theories of aiding and abetting and joint criminal conduct. For this reason, the court properly instructed the jury on these theories. *See State v. Neiderbach*, 837 N.W.2d 180, 210-11 (Iowa 2013) (finding the court properly submitted instructions on aiding and abetting, looking at the sufficiency of the evidence to support the theory); *State v. Smith*, 739 N.W.2d 289, 292-93 (Iowa 2007) (considering theories of aiding and abetting and joint criminal conduct). "Counsel does not fail to perform an essential duty by failing to raise a meritless objection." *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015). We conclude Jones has failed to show he received ineffective assistance on this ground.

**B.** Jones claims defense counsel should have argued Jones could not be convicted of first-degree robbery under a theory of joint criminal conduct because Morrissey had been convicted of second-degree robbery. "A judgment against one [codefendant], whether of conviction or acquittal, has no bearing on

the other." *State v. Young*, 211 N.W.2d 352, 353 (Iowa 1973). Counsel had no duty to raise this issue. *See Lopez*, 872 N.W.2d at 169.

**C.** Jones claims he received ineffective assistance because defense counsel did not: (1) file a timely notice he intended to call Morrissey as a witness; (2) make an offer of proof of Morrissey's testimony; (3) advise Jones to waive his right to a speedy trial so Morrissey could testify; and (4) determine before the trial one of the jurors had previously worked with Jones. We determine the present record is inadequate to address these claims on appeal. *See State v. Elston*, 735 N.W.2d 196, 200 (Iowa 2007) (noting claims of ineffective assistance may be considered on direct appeal only if the record is sufficient). We conclude these claims should be preserved for possible postconviction proceedings.

**D.** In a pro se brief, Jones claims he received ineffective assistance because defense counsel did not object to the State's use of a statement by Morrissey, although he was excluded as a witness. This apparently refers to Morrissey's statement to officers concerning the location of the gun, which Jones claims Morrissey placed in the alley near Jones's home. Jones states he was prejudiced by Morrissey's statement because he never had the opportunity to depose Morrissey prior to trial.

Officer Jamie Sullivan testified he received a letter from Morrissey, who was then in jail, asking to speak to him. At their meeting, Morrissey volunteered information that led officers to search in a particular location. Officer Sullivan did not testify to any particular statements made by Morrissey, and in fact, the prosecutor stated, "I don't want to ask about the content of your conversations with Mr. Morrissey." Based on information received from Morrissey, officers were

able to find the firearm.  We note Jones could have deposed Morrissey prior to the trial; the issue causing the exclusion of Morrissey as a witness was whether the State would have time to depose him after Jones listed Morrissey as a witness.

We conclude Jones has failed to show he received ineffective assistance of counsel on this ground.  No specific statements or testimony by Morrissey were presented by the State during Jones's criminal trial.

We affirm Jones's convictions for first-degree robbery, first-degree burglary, and intimidation with a dangerous weapon with intent.

**AFFIRMED.**