# IN THE COURT OF APPEALS OF IOWA

No. 17-0184
Filed February 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JACKIE B. TAYLOR,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson (motion), and James S. Heckerman (trial), Judges.

        Jackie Taylor appeals following convictions for six counts of sexual abuse in the third degree and three counts of lascivious conduct with a minor. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., Bower, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Jackie B. Taylor appeals following convictions for six counts of sexual abuse in the third degree[1] involving two alleged victims, S.Z. and C.W., and three counts of lascivious conduct with a minor, S.Z. Taylor argues the court abused its discretion in consolidating the cases involving the different minors, trial counsel was ineffective in numerous respects, and the sentence imposed was illegal and an abuse of discretion. Because we find no abuse of discretion in the court allowing the cases to be tried together, the record is not adequate to address the ineffectiveness claims, and the sentencing challenges are not ripe for review at this time, we affirm the convictions.

**I. Background Facts.**

Taylor lived in a residence with Connie and her husband, Kevin; Connie's daughter, Patty; and Connie's grandchildren, S.Z., C.W., and W.N. Though S.Z. and C.W. are biological siblings, S.Z. had lived with Connie most of her life and was adopted by Connie prior to the events at issue here. Taylor is not related to any of the others with whom he lived. He has lived with Connie since 2003, and Connie views Taylor as a father figure.

On May 17, 2016, sixteen-year-old S.Z. arrived at school tearful and upset. She reported to the school counselor that Taylor was touching her inappropriately. The department of human services was contacted and an

---

[1] The alleged conduct leading to the charges occurred over a period of three years between 2013 and 2016. *See* Iowa Code §§ 709.1 (sex abuse), 709.4(1)(a) (defining third degree sex abuse), 709.14 (defining lascivious conduct with a minor). Because no substantive changes have occurred in the statutory provisions, we will refer to the 2016 Iowa Code for ease of reference.

investigator asked S.Z. if she wanted to be taken back to Connie's. S.Z. stated she "didn't want to be molested anymore."

When Detective Hayley Bloom spoke with Taylor about S.Z.'s allegations, Taylor stated "maybe when I hug her possibly. Accidently maybe hit her boob or something." Taylor told police he thought S.Z. might have fabricated the accusations because she wanted to live with her father and because she did not like her grandmother's rules.

A few months after S.Z.'s allegations, police received a report that Taylor had abused S.Z.'s brother, C.W. C.W. had run away from Connie's residence in December 2015 when he was in ninth grade and was fifteen years old. C.W. hitchhiked to South Dakota, where he began to live with his biological father and stepmother. In August 2016, C.W. took his stepmother's vehicle and left a suicide note behind. He was located in Wyoming later that day where the vehicle had run out of gas. C.W. was hospitalized and while there disclosed he had been sexually abused when at his grandmother's house.

In June 2016, the State charged Taylor concerning conduct related to S.Z.—two counts of sexual abuse in the third degree and three counts of lascivious acts with a minor. In August, the State charged Taylor concerning conduct related to C.W.—six counts of sexual abuse in the third degree, which was later amended to four counts.

The State moved to consolidate the cases. Taylor objected, arguing the cases were unrelated, had different victims, and consolidation would be highly prejudicial to him. After a hearing, the court allowed consolidation.

At trial, C.W. testified Taylor had abused him throughout seventh, eighth, and ninth grades (until C.W. left the final time). C.W. stated Taylor would use his hand to touch C.W.'s penis, which occurred on more than one occasion. Taylor also made C.W., on more than one occasion, use his hand to touch Taylor's penis. When C.W. would object, Taylor threatened to tell Connie that C.W. was hurting the other minors in the household. C.W. testified Taylor was the main reason he kept trying to run away.

S.Z. testified Taylor was a grandfather figure. She testified he started touching her breasts when she was eleven years old and continued to do so until she was sixteen. S.Z. stated Taylor would touch her breasts with "[h]is hands and his mouth"; he would make her "[t]ake [her] shirt off and [her] bra," to let him "see her breasts"; and Taylor would watch her shower at times. S.Z. testified that on at least two occasions Taylor touched her vagina with his fingers. She recounted the second time occurred "[o]n his chair in the living room" when she was "[m]aybe 15" and a freshman in high school. She stated Taylor used his fingers to touch her vagina and "his fingernails were very long" and "it hurt." She testified she told him to stop but he did not. Further, S.Z. testified that when she was thirteen or fourteen Taylor made S.Z. touch his penis with her hand. S.Z. stated Taylor told her she should take pictures of her breasts for him and that he wanted to "jump her bones." S.Z. also stated Taylor showed her pornography on his computer and offered to buy her a sex toy. Taylor told S.Z. that "he would get in a lot of trouble" if she told anyone, and she promised not to tell. S.Z. did not think Connie would believe her if she reported what happened. S.Z. said she "did not feel like [she] could say no to him."

S.Z. testified Patty once asked her if anything was going on because Patty had seen Taylor touch S.Z.'s breast. S.Z. told Patty "nothing was happening" because S.Z. did not want Patty to know she was being abused. S.Z. had promised Taylor she would not tell, and she testified "it's not really right to break your promise."

Patty testified she asked S.Z. about an incident when she observed Taylor touch S.Z.'s breast. S.Z. told her mother it was an accidental touching, and Patty did nothing more. When asked to describe what she saw, Patty stated, "[I]t was like a clockwise turn (indicating) and then he finished the rotation."

Taylor testified and denied inappropriately touching either of the minors or having them touch him. As to Patty's observation of him touching S.Z.'s breast, he stated, "It would be virtually impossible" to cup S.Z.'s breast as described because S.Z. "had a pretty heavy coat on."

Connie testified on Taylor's behalf, asserting C.W. and S.Z. both were "not the most truthful children." She testified the children both wanted to go live with their fathers and neither wanted to follow the rules of her household.

The jury convicted Taylor as charged, and he now appeals.

## II. Scope and Standards of Review.

"We review refusal to sever multiple charges against a single defendant for abuse of discretion." *State v. Elston*, 735 N.W.2d 196, 198 (Iowa 2007).

Our review of constitutional issues, such as claims of ineffective assistance of counsel, is de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Discussion.**

**A. Consolidation.** Iowa Rule of Criminal Procedure 2.6(1) allows "[t]wo or more indictable public offenses which arise from . . . two or more transactions or occurrences constituting parts of a common scheme or plan" to be "alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise." Our supreme court has announced "the State [has] the right to charge multiple counts in the same offense, to achieve judicial economy." *State v. Romer*, 832 N.W.2d 169, 182 (Iowa 2013). "To prove the district court abused its discretion in refusing to sever charges, [the defendant] bears the burden of showing prejudice resulting from joinder outweighed the State's interest in judicial economy." *Id.* at 181 (quoting *Elston*, 735 N.W.2d at 199).

Taylor argues the allegations of C.W. and S.Z. are not legally entwined and, thus, the cases should not have been tried together. "[T]he essential test in determining whether a common scheme or plan exists is the requirement that all offenses charged must be products of a single or continuing motive." *Id.* (quoting *State v. Lam*, 391 N.W.2d 245, 249 (Iowa 1986) (adopting the Missouri test)); *accord Elston*, 735 N.W.2d at 198 (holding "transactions or occurrences are part of a 'common scheme or plan' under [rule] 2.6(1) when they are the 'products of a single or continuing motive'" (citations omitted)).

Here, the trial court determined there was a common scheme:

> The two victims, S.Z. and C.W., are siblings, having the same mother but different fathers. Both children lived with their mother in the same Council Bluffs residence until approximately a year ago when C.W. moved to live with his father in South Dakota. The allegations contained in Case FECR150716 [concerning S.Z.]

covered a period of months from December 18, 2013, through May 16, 2016. The allegations contained in FECR151225 [concerning C.W.] are alleged to have occurred over the similar time period dating from August 1, 2013, through May 31, 2015. The defendant resided in the same house in Council Bluffs, Iowa, as S.Z. and C.W. during the time of the respective allegations. Most, if not all of the allegations are alleged to have occurred in the defendant's bedroom in that home where they all lived. Both children as well as other residents of that home are anticipated to be witnesses in both trials. The alleged sexual contact between the defendant and both children include hand to genital contact. Both cases include allegations that the defendant warned the victims of consequences if others learned of the act. Based on all these factors, the court concludes that the separate occurrences show a common scheme and plan to pervert the children's morals and to use the children for his own sexual purposes.

The trial court's reasoning is consistent with Iowa case law. *See Romer*, 832 N.W.2d at 182-83 (noting the defendant had a common scheme to victimize children to fulfill his sexual desires, the conduct was shown to be geographically proximate, and the defendant displayed a similar modus operandi); *Elston*, 735 N.W.2d at 200 (finding a common scheme or plan where "[a]ll of the crimes alleged in this case against Elston could be found to have been motivated by his desire to satisfy sexual desires through the victimization of children" and the transactions "occurred in close geographic proximity").

Taylor also argues the evidence encouraged the jury to make its findings on the basis of propensity and that the nature of the charges weighed towards a finding of prejudice. In *Romer*, the court noted the defendant's arguments pertaining to "our evidentiary rule on propensity" is "distinct from an analysis under our law dealing with joinder of offenses." 832 N.W.2d at 183. Taylor's burden was to establish that "prejudice resulting from joinder outweighed the State's interest in judicial economy." *Id.* at 181.

The trial court rejected Taylor's contention:

> The court finds the defendant has not shown sufficient prejudice to outweigh the interest in judicial economy. Many of the same witnesses would be called to testify in both cases. While the evidence in both cases may overlap if consolidated, the trial court will have the opportunity to caution jurors that they must determine whether the defendant is guilty or not guilty separately on each count. Accordingly, based on the potential duplication of witnesses in separate trials and the trial court's ability to caution the jurors at trial concerning their deliberations on each count, the court finds the State's judicial economy concerns outweigh the prejudice of having one trial with two complaining witnesses.

(Citations omitted.)

Taylor asserts the trial court did not give the cautionary instruction mentioned in the trial court's reasoning and that even if the instruction had been given, "no limiting instruction would allow the jury to separate out the counts and determine the verdict on an untainted basis." The State observes Taylor did not request the cautionary instruction and, therefore, cannot complain now that the instruction should have been given. We agree. *See State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review."); *see also State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) ("Normally, objections to giving or failing to give jury instructions are waived on direct appeal if not raised before counsel's closing arguments, and the instructions submitted to the jury become the law of the case.").

In any event, the State points out the jury was instructed to "determine the defendant's guilt or innocence from the evidence, and the law in these instructions," the instructions set out specific criteria for assessing Taylor's guilt on each offense charged, and the jury was instructed on the individual elements

of each offense.[2]  "We presume juries follow the court's instructions."  *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010).

We find no abuse of the court's discretion in allowing the cases to be consolidated.

***B. Ineffective assistance of counsel.***  Taylor asserts his trial counsel was ineffective in failing to object to the admission of the recorded interview of S.Z. by April Anderson, a forensic interviewer with Project Harmony, a child

---

[2] For example, Instruction 16 provides:

> In count I of Case No. FECR151225, the State must prove both of the following elements of sexual abuse in the third degree:
> 1. On or between the 1st day of January, 2012, through the 15th day of November, 2014, the defendant performed a sex act with C.W., whose date of birth is XXXX, by having sexual contact between the hand of the defendant and the genitals of the victim.
> 2. The defendant performed the sex act with C.W. while he was under the age of fourteen.
> If the State has proved all of the elements, the defendant is guilty of sexual abuse in the third degree.  If the State has failed to prove either one of the elements, the defendant is not guilty.

And Instruction 21 provides:

> In Count III of Case No. FECR150716, the State must prove all of the following elements of lascivious acts with a minor:
> 1. On or about the 18th day of December, 2013, through the 17th day of December, 2014, the defendant forced, persuaded, or coerced S.Z., with or without her consent, to disrobe or partially disrobe.
> 2. The defendant engaged in such conduct with the specific intent to arouse or satisfy the sexual desires of the defendant or S.Z.
> 3. At the time of the conduct, the defendant was then 18 years of age or older.
> 4. At the time of the conduct, the defendant was in a position of authority over S.Z.
> 5. At the time of the conduct, S.Z. was under the age of 18 and not married.
> If the State has proved all of the elements, the defendant is guilty of lascivious conduct with a minor.  If the State has failed to prove any one of the elements, the defendant is not guilty of lascivious conduct with a minor.

The instruction for each additional count similarly set out the date of the alleged conduct, who was the alleged victim, and the elements of the offense.

advocacy center, on hearsay grounds and as improper vouching[3]; in failing to request the cautionary instruction that jury must determine whether Taylor was guilty or not guilty on each count[4]; and due to cumulative error.

To prevail on an ineffective-assistance-of-counsel claim, a defendant must establish (1) counsel failed to perform an essential duty and (2) the defendant was prejudiced as a result. *State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013) "We usually preserve claims of ineffective assistance of counsel for potential postconviction proceedings. However, if the record is sufficient to decide such claims, we will do so on direct appeal." *Elston*, 735 N.W.2d at 200 (citations omitted). We conclude the record is not adequate to address all the ineffectiveness claims here so we preserve them for possible postconviction relief proceedings. *See Clay*, 824 N.W.2d at 502 ("Clay will have to bring all his ineffective-assistance-of-counsel claims in a postconviction relief action, because he raises multiple claims, some of which require further development of the record."); *see also State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("[P]ostconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance.").

*C. Sentence.* Finally, Taylor challenges the sentence entered concerning court costs and fees as illegal and an abuse of discretion. Taylor was ordered to pay court costs and attorney fees, which were to be certified later. Because

---

[3] Counsel did object on ground the exhibit was duplicative because S.Z. had already testified.

[4] Iowa Criminal Jury Instruction No. 100.15, which provides:

> The defendant has been charged with ___ counts. This is just a method for bringing each of the charges to trial. If you find the defendant guilty or not guilty on any one of the ___ counts, you are not to conclude the defendant is guilty or not guilty on the other(s). You must determine whether the defendant is guilty or not guilty separately on each count.

Taylor is challenging a temporary restitution order, his current claims are not ripe for our review. *See State v. Jackson*, 601 N.W.2d 354, 357 (Iowa 1999).

We affirm.

**AFFIRMED.**